## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN

In the Matter of:

**WESTPACK HOLDINGS, INC.**

Debtor.

Case No. DG 23-02033
Chapter 11- Subchapter V
Hon. Scott W. Dales

_____/

## CHAPTER 11 PLAN OF WESTPACK HOLDINGS, INC.
## UNDER SUBCHAPTER V OF CHAPTER 11

This is the Chapter 11 Plan (the "Plan") proposed by Debtor, Westpack Holdings, Inc. ("Westpack" or the "Debtor"), under Subchapter V of Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding to vote on the Plan.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY [_____].**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY [_____]. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF MICHIGAN, 1 DIVISION AVE N, ROOM 200, GRAND RAPIDS, MI 49503**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR [_____] IN COURTROOM NO. _____ AT THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF MICHIGAN, 1 DIVISION AVENUE N, COURTROOM _____, GRAND RAPIDS, MICHIGAN 49503.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

**TABLE OF CONTENTS –**

I. Introduction……………………………………………………………………….. 5

II. Background………………………………………………………………………. 6-10

III. Treatment of Allowed Administrative Expense Claims and Priority Tax Claims…………. 10-12

      3.1. Administrative Expense Claims……………………………………… 10

      3.2. Administrative Expense Bar…………………………………………… 10-11

      3.3 Professional Fees……………………………………………………… 11

      3.4 Priority Tax Claims…………………………………………………… 11

      3.5 503(b)(9) Claims……………………………………………………… 11-12

IV. Classification and Treatment of Secured Claims, Unsecured Claims, and Equitable Interests……………………………………………………………………............

.                                                   12-15

      4.1 Classification and Treatment of Claims……………………………… 12-14

          4.1.1 Class 1: The Huntington National Bank Secured Claim……….. 12-13

          4.1.2 Class 2: The Small Business Administration Secured Claim….. 13-14

          4.1.3 Class 3: General Unsecured Claims…………………………... 14

          4.1.4 Class 4: Equity Interests……………………………………… 15

      4.2 Claim Objections……………………………………………………… 15

V. Treatment of Executory Contracts and Leases………………………………… 15-16

      5.1 Assumed Executory Contracts………………………………………… 16

VI. Implementation of Plan and Distributions……………………………………… 16-19

      6.1 Funding for the Plan-The Sale………………………………………... 16

      6.2 Plan Funding Mechanism……………………………………………... 17

      6.3 Corporate Action……………………………………………………… 17

      6.4 Closing of the Chapter 11 Case……………………………………… 17

      6.5 Winding Down of Affairs……………………………………………... 17

      6.6 Distribution…………………………………………………………… 17-18

      6.7 Disbursing Agent……………………………………………………… 18

      6.8 Unclaimed Distributions……………………………………………… 18-19

      6.9 Setoffs………………………………………………………………… 19

      6.10 Prepayment Right…………………………………………………… 19

VII. Avoidance Actions and/or Preferential Transfer and Other Actions……………………… 20-23

7.1 Section 547- Preference Claims…………………………………….. 20

7.2 Preference Claim Analysis…………………………………………. 21-22

7.3 Secured Lender Claims-Avoidance Review Disclosure……………… 22-23

7.4 Section 548- Fraudulent Conveyances………………………………. 23

VIII. Subchapter V Plan Confirmation Requirements………………………………… 23-25

8.1 Best Interest of Creditors- Liquidation Analysis……………………… 23-24

8.2 The Liquidating Plan is Fair and Equitable…………………………. 24

8.3 Plan Feasibility…………………………………………………. 24-25

IX. Voting Rights and Plan Confirmation……………………………………………… 25-26

9.1 Voting Procedures……………………………………………… 25

9.2 Non-Consensual Plan Confirmation…………………………………. 25-26

X. Effect of Confirmation of the Plan…………………………………………… 26-28

10.1 Effective Date…………………………………………………. 26

10.2 Discharge……………………………………………………. 26

10.3 Term of Bankruptcy Injunctions or Stays………………………….. 26

10.4 Effect of Confirmation on Liens…………………………………. 26-27

10.5 Causes of Action Reserved and Preserved…………………………. 27

10.6 Material Default………………………………………………. 27-28

XI. General Provisions………………………………………………………… 28-30

11.1 Definitions and Rules of Construction……………………………. 28

11.2 11 U.S.C. § 1111(b)(2) Election by Secured Creditors……………… 28

11.3 Severability…………………………………………………… 28

11.4 Binding Effect…………………………………………………. 28

11.5 Notices………………………………………………………. 29

11.6 Modification of the Plan………………………………………… 29

11.7 Post-Confirmation Employment and Compensation of Professionals.. 29

11.8 Headings……………………………………………………… 30

11.9 Governing Law………………………………………………… 30

11.10 Retention of Jurisdiction………………………………………. 30

11.11 Vesting Upon Conversion………………………………………. 30

**EXHIBITS**

Exhibit 1              Claims Summary

Exhibit 2              Solemn Affirmation of David J. Distel in Support of a Private Sale

Exhibit 3              Distribution Waterfall

Exhibit 4              Preference Analysis

Exhibit 5              Solemn Affirmation of Richard Wilson

Exhibit 6              Liquidation Analysis

# I. <u>INTRODUCTION</u>

On September 1, 2023, Debtor filed its petition for protection under Subchapter V of Chapter 11 of the Bankruptcy Code. Debtor is a debtor as defined in 11 U.S.C. § 1182(1) and, therefore, qualifies for Subchapter V protection. Debtor is currently operating as the "Debtor-in-Possession" as the term is defined in 11 U.S.C. § 1182(2). Scott A. Chernich was appointed as the Subchapter V Trustee to perform those duties set forth in 11 U.S.C. § 1183(b), including to "facilitate the development of a consensual plan of reorganization." Upon confirmation of a Consensual Plan, the services of the Subchapter V Trustee will end upon the substantial consummation of the Plan, which is defined at the "commencement of distribution under the plan." 11 U.S.C. §§ 1183(c)(l); 1101(2). Debtor will file a motion to close the case upon Debtor's first plan payment after the Effective Date. This is a liquidating Plan. Whether the Plan is confirmed consensually or non-consensually, Debtor proposes to make a one-time distribution pursuant to this Plan and close the case.

The following is a proposed Plan of liquidation, pursuant to §§ 1190 and 1191. As discussed in greater detail below, the Plan will be funded from the proceeds generated by a sale of substantially all of the Debtor's assets. If confirmed by the United States Bankruptcy Court for the Western District of Michigan (the "Court"), the Plan will bind all creditors to the positions identified within the Plan. However, until the Plan is confirmed by the Court, it is considered a proposal and will not bind any party, including Debtor. The binding effect of the Plan is contingent on confirmation by the Court. All creditors should review the Plan, identify the proposed treatment of their claim, and consult with an attorney regarding the contents contained herein.

If you have any questions regarding the Plan, you may contact Counsel for Debtor: A. Todd Almassian or Greg J. Ekdahl, Keller & Almassian, PLC, 230 E. Fulton Street, Grand Rapids, MI 49503, (616) 364-2100.

**All creditors should review the Plan, identify the proposed treatment of their claim, and consult with an attorney regarding the contents contained herein. Debtor is providing ballots to creditors and soliciting votes to determine acceptance or rejection of the Plan.**

**THE DEBTOR STRONGLY RECOMMENDS THAT YOU VOTE IN FAVOR OF THIS PLAN.**

## II. BACKGROUND

**Corporate Structure.**

Westpack produces and supplies custom corrugated, foam, plastic and honeycomb packaging for many different industries including automotive, furniture, consumer products, and casting and machining markets. The Debtor is owned by Richard Wilson.

**Business Operations.**

The company currently has approximately 12 full-time employees and 3-4 part time and/or seasonal employees that are employed during peak times of production.

The Debtor's headquarters are at 1204 W. Western Ave #3, Muskegon, Michigan, 49441. The Debtor leases this location from Leestma Management, LLC. The Debtor leases 43,769 square feet of commercial warehouse space.  Debtor's lease payments are current.

**Business History.**

Westpack was founded in 1997 as Innovative Package Engineering, Inc. and operated as Westpack LLC, until November of 2016.  Richard Wilson purchased Westpack in November of 2016 under Westpack Holdings, Inc.

**Events Leading to Chapter 11 Filing**

Within the first 24 months of purchasing the business, Debtor unfortunately suffered some major setbacks. Its third largest customer at the time moved most of their manufacturing to Mexico. Another top five customer filed for bankruptcy, which resulted in a significant loss for the Debtor. Additionally, Debtor's second and sixth largest customers elected to close down operations due to market conditions.

As a result, the Debtor faced difficult financial circumstances, but managed to slowly replace a percentage of its lost business in order to keep it operational.  At that point however, Debtor's path to success was cut short by the COVID 19 Pandemic.

During the COVID 19 Pandemic, the Debtor was deemed an essential supplier, but only a small portion (50-60%) of its customers were deemed as such.  Debtor reduced full time employees and took advantage of two rounds of PPP loans in effort to remain solvent during this time. The

Debtor also took advantage of the EIDL program and invested in equipment and machinery in effort to position itself to prosper post pandemic.

Following the pandemic, the Debtor was initially busy and made key investments in newer, faster and more efficient equipment to allow it to process the amount of business it was doing and in anticipation of its customer's planned demand. The Debtor showed positive growth rate in late 2020.

In order to support the growth, the Debtor invested heavily during the growth period in 2021 and 2022 in addressing deferred maintenance issues, three new assembly lines to handle growth in its laminated business, purchased three used fork trucks to move materials in and out, an automated box making line that printed, slotted, scored, die cut and glued in one operation, as well as additional equipment to support that production line. This caused significant financial strain, especially in late 2022 as the Debtor was having to farm out a large percentage of its work during key parts of the installation process on the new machine, as well as a significant rebuild and upgrade to other box making machinery. The Debtor also realized significant increases in its cost of financing through its original SBA loan as the interest rate more than doubled in a 12-month calendar period. Also, in the third quarter of 2022, the Debtor started to see reduced forecasts in demand in the first quarter of 2023.

As the Debtor entered this economic downturn, while still trying to finish installation and upgrades on its equipment, it saw a significant drain on its cash reserves as it was operating at significantly lower sales levels. While the cost of raw materials was declining, there was additional pressure from the market due to package industry pricing reductions, which also negatively affected cash flow.

As the economic downturn continued, the Debtor realized that the continued pressure on margins, interest rate increases, inflationary increases on labor, health insurance and benefits, and increasing labor costs to retain employees, would continue to reduce its cash reserves below a viable operating level. Notwithstanding its efforts to decrease costs and increase profit, and efforts to permit the Debtor to continue as a going concern, the Debtor's cash position remained severely distressed. The Debtor determined Chapter 11 was necessary.

**Filing of Statement of Financial Affairs and Schedules**

On September 1, 2023, the Debtor filed its Voluntary Petition, Top 20 Creditors, Statement of Financial Affairs and Schedules [DK 1].

**First Day Relief**

On the Petition Date, the Debtor sought certain relief from the Bankruptcy Court (collectively, the "First Day Relief") to ensure a seamless transition into bankruptcy and uninterrupted continuation of the Debtor's business through the Chapter 11 Subchapter V process, including a Motion for Authority to Use Cash Collateral (the "Cash Collateral Motion" – See DK 5) and a Motion Approving Bidding Procedures for the Proposed Sale of Substantially all of the Debtor's Assets (the "Sale Motion" – See DK 8).

On September 12, 2023, the Bankruptcy Court held hearings regarding the requested First Day Relief.

On September 13, 2023, pursuant to the Debtor's requested operational First Day Relief, the Bankruptcy Court entered orders (a) Establishing Deadlines for Filing Proofs of Claim, Proofs of Interest and Requests for Administrative Expenses Under 11 U.S.C. § 503(b)(9) [DK 41] (the "Bar Date Order"); (b) Order (A) Approving Bidding Procedures for the Proposed Sale of Substantially all of the Debtor's Assets and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (B) Approving Bid Protections, (C) Approving the Establishment of Cure Amounts, and (D) Scheduling a Final Sale Hearing and Approving the Form and Manner of Notice Thereof ( the "Bidding Procedures Order") [DK 42]; (c) (i) Authorizing the Debtor to Pay Employee Obligations and Continue Employee Benefit Programs; (iii) Authorizing Debtor to Pay Certain Pre-petition Tax Obligations; and (iii) Directing Financial Institutions to Honor Outstanding Employee Obligation Payments [DK 43] (the "Employee Wages Order"), and; (d) entered an interim and final Order Authorizing the Debtor to Use its Cash Collateral and Provide Adequate Protection and Other Relief [DK 44] (the "Cash Collateral Order").  The interim Cash Collateral order has now become a Final Order.

**Bar Date for Filing Prepetition Claims**

By Order dated September 13, 2023 (the "Bar Date Order") [DK 41], the Bankruptcy Court established (a) October 20, 2023, as the last date for all persons and entities to file proofs of claim

based on prepetition Claims against the Debtor; (b) October 30, 2023, as the last day for all requests by any entity asserting an Administrative Expenses pursuant to 11 USC § 503(b)(9); and (c) February 28, 2024, as the last date for all governmental units to file proofs of claims based upon prepetition Claims against the Debtor. There is no state or federal pre-petition tax liability that the Debtor is aware of.

In accordance with the Bankruptcy Rule 3003(c)(2), holders of Claims who fail to comply with the terms of the Bar Date Order and whose Claims are either not listed in the Schedules or are listed as disputed, contingent, or unliquidated are forever barred from (a) filing a proof of claim with respect to such Claim; (b) asserting such claim against the Debtor or its Estate and/or property; (c) voting on any plan filed in this Chapter 11 Subchapter V Case; and (d) participating in any Distribution in the Chapter 11 Subchapter V case on account of such Claim.

Attached to this Plan is a summary of all claims timely filed, or scheduled as liquidated, non-contingent claims that are not otherwise disputed.  See Claims Summary attached as **Exhibit 1**.


**<u>The Sale Process</u>**

In advance of the filing of the Chapter 11 proceeding, the Debtor explored and initiated a sale process that would transition the company to a new owner while maintaining the business as a going concern, retain employees, and pay creditors as much as possible under the circumstances.

Through significant efforts on behalf of the Debtor's financial advisor, David Distel, and his company Distel Thiede Advisory Services, LLC ("DTAS"), along with the assistance of Westpack's bankruptcy counsel and the cooperation of interested parties, the Debtor was able to execute an Asset Purchase Agreement (the "APA") with Casey Young, for essentially all of the Debtor's assets. (**See DK 8, at Exhibit A, for a copy of the APA).**  Casey Young formed a new entity and the buyer is Westpack Acquisition, LLC. The Debtor's principal, Richard Wilson, has no ownership interest in this entity.

The Debtor established an open bidding process, and actively marketed and sought competitive bids for the purchase of its assets.  Despite some interest, no other parties ultimately submitted a competitive bid for the purchase of the assets.  The marketing process is outlined in the Solemn Affirmation of David J. Distel In Support of a Private Sale as **Exhibit 2** (the "Distel

Affirmation"). This Plan moves forward with the proposed sale to Westpack Acquisition, LLC pursuant to the terms of the APA.

The principal of the Debtor is Richard Wilson. Mr. Wilson has been offered employment with the Buyer. Mr. Wilson has not yet formally agreed to terms, but anticipates he will receive a salary similar to what he currently earns at the company ($2,403.85 per week gross), health insurance benefits, and retirement benefits. Mr. Wilson has not been promised an ownership interest in the Buyer or any other forms of compensation not otherwise disclosed.

## III. TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against Debtor are not classified for the purposes of voting on or receiving distributions under the Plan. All such Claims are instead treated separately upon the terms set forth in this Section.

3.1 **Administrative Expense Claims**.

All Administrative Expense Claims, Professional fees, and the Priority Tax Claims described below, have been or will be paid in full, in Cash, in such amounts as (i) are incurred in the ordinary course of business by Debtor pursuant to the normal business terms between the parties, (ii) are Allowed by the Bankruptcy Court upon the later of the Effective Date, the date upon which there is a Final Order allowing such Administrative Expense Claim if such claims were Disputed, or any other date specified in such order or this Plan, (iii) are allowed pursuant to any settlement reached or Order entered pursuant to the provisions of 11 U.S.C. §1114, or (iv) may be agreed upon between the holder of such Administrative Expense Claim and Debtor. Administrative Expense Claims will include undisputed costs incurred in the operation of Debtor's business after the Petition Date.

3.2 **Administrative Expense Bar.**

Except with respect to claims incurred and paid in the ordinary course of business, Debtor has paid all known Administrative Expense Claims, with the exception of Professional fees and

10

Subchapter V Trustee fees, or as otherwise described below regarding Section 503(b)(9) claim stipulations. If a Claimant believes it has an Administrative Expense Claim (other than Professional fees, Subchapter V Trustee fees, or 503(b)(9) claims) that has not been paid, then that Claimant must file a motion to allow its Administrative Expense Claim no later than the Effective Date. If a motion is not timely filed, then that Claimant is forever barred from seeking an Administrative Expense Claim.

### 3.3 **Professional Fees.**

Professionals seeking compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code: (a) must file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date no later than seven (7) days after the Effective Date; and (b) the fees and expenses will be paid in such amounts as are allowed by the Bankruptcy Court on the later of the (i) Effective Date, (ii) date agreed to by Debtor and the Professional, or (iii) or the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

### 3.4 **Priority Tax Claims.**

Priority Tax Claims are considered unclassified claims for purposes of a Chapter 11 reorganization plan. 11 U.S.C. § 1123(a)(1).  Section 11 U.S.C. § 1129(a)(9)(D) requires that governmental units with priority tax claims under 11 U.S.C. § 507(a)(8) receive, over the life of the plan, the "amount equal to the allowed amount of such claim "in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan."  The Internal Revenue Service filed a Priority Proof of Claim in the amount of $100.00 (Claim No. 11). However, the Debtor does not believe there are any priority tax debts. Debtor's 2022 tax return is anticipated to be filed no later than November 10, 2023. Debtor's review indicates a corporate tax loss of approximately $63,000.

### 3.5 **503(b)(9) Claims**

The Bar Date for Administrative Expenses Under 11 U.S.C. § 503(b)(9) was October 30, 2023 (See DK 41).  The Debtor, with assistance of counsel and its financial advisor, reviewed and

identified possible 503(b)(9) claimants in this proceeding. As of the filing of this Plan, 10 503(b)(9) claims have been filed by Stipulation, in the total amount of $61,885.88. These stipulated 503(b)(9) claims will be paid in full directly by the Debtor no later than 30 days from the Effective Date of the entry of a Confirmation Order in this case. No other 503(b)(9) claims or Motions to Approve 503(b)(9) claims were filed or otherwise requested.

## IV. CLASSIFICATION AND TREATMENT OF SECURED CLAIMS, UNSECURED CLAIMS, AND EQUITABLE INTERESTS

4.1.      **Classification and Treatment of Claims**: The categories set forth below classify all claims in this proceeding ("Claims") and all interests ("Interests"). A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class, except as set forth in a specific class. The treatment with respect to each Class of Claims and Interests provided for in this Plan shall be in full and complete satisfaction and release of such Claims and Interests. A Secured Creditor shall retain its lien until the Plan terms are complied with.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Secured - Huntington | Unimpaired | Not entitled to Vote |
| 2 | Secured - SBA | Impaired | Entitled to Vote |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Equity Interests | Unimpaired | Not entitled to Vote |

4.1.1   **CLASS 1: The Huntington National Bank ("Huntington") Secured Claims** - Class 1 consists of the allowed Secured Claim of The Huntington National Bank. The Class 1 Claim will be paid in full and is therefore not impaired and is not entitled to vote. The details of the claims are as follows:

**The Huntington National Bank- $503,402.89 -** Huntington filed its secured claim in the amount of $503,402.89 (Claim #13) (the "Huntington Secured Claim"). To secure its claim, The Huntington National Bank asserts a first priority lien upon and security interest

in Debtor's personal property. The Debtor provides Huntington's total secured claim in this Chapter 11 Plan will be $503,402.89, in addition to reasonable attorney fees and costs permitted under the terms of the loan agreements. Huntington will file an amended claim at or near the sale closing date to establish its total claim to be paid inclusive of all permitted fees and costs.

<u>Huntington Treatment</u> – Huntington shall have an allowed fully secured claim in the amount of $503,402.89, plus post-petition interest at the contract rate, plus post-petition reasonable attorney's fees, both pursuant to 11 USC 506(b). On and after the Effective Date, Huntington's claim shall bear interest at the contract rate. Huntington shall retain its lien on the Debtor's assets, to the same extent and priority as existing as of the Petition Date and as further provided in any cash collateral stipulations and orders entered in this bankruptcy proceeding. Such agreements, stipulations, and orders are incorporated herein by this reference and shall evidence the Debtor's post confirmation liens and obligations to Huntington, and Huntington's rights and remedies with respect to the collateral described therein. A breach or default under such terms incorporated herein shall constitute a breach or default under this Plan.

Huntington's claim will be paid in full at the closing on the Sale and purchase of the Debtor's assets as described in Section 6.1 of this Plan. Should a failure to close on the Sale of the Debtor's assets constitute a breach or default under this Plan, the Debtor reserves the right to file an amended Plan that pays Huntington's claim in full in accordance with the terms of the Bankruptcy Code.

4.1.2   **CLASS 2: Small Business Administration - $144,729.00-** Class 2 consists of the allowed Secured Claim of the Small Business Administration ("SBA") that will not be paid in full. Class 2 Claims are impaired and are entitled to vote. Class 2 Claims are allowed as to the SBA. The details of the claims are as follows:

**<u>Small Business Administration</u>** – The SBA filed a secured claim in the total amount of $1,281,905.00, with $1,250,000.00 listed as secured, and $31,905.00 listed as unsecured (the "SBA Claim"). To secure its claim, the Debtor entered into certain loan and security agreements with the SBA, as subordinated to senior lender Huntington. The SBA has a

lien upon and security interest in Debtor's personal property. The Debtor calculates the SBA's total secured claim in this Chapter 11 Plan will be payable in the amount of $144,729.00.

<u>SBA Treatment</u> – The SBA will be paid $144,729.00 in full satisfaction of its allowed secured claims. See Distribution Waterfall attached as **Exhibit 3**. Any deficiency balance will be treated as a Class 3 General Unsecured Claim. **However, an updated Distribution Waterfall, similar to Exhibit 3, shall be filed by the Debtor immediately in advance of the Confirmation Hearing to be scheduled in this case. The amount to be paid to the SBA on the updated Distribution Waterfall shall identify the exact amount to be distributed to the SBA, after adjustments for all administrative expenses, other wind down expenses, and the Class 3 General Unsecured Creditor carve out of $25,000.00. This amount may be less than, or more than, the $144,729.00 currently anticipated. Additionally, it is estimated the SBA will receive approximately $19,226.18 of the Class 3 General Unsecured Creditor distribution total. The goal is to ensure the Debtor can increase or decrease the amount to the SBA based on the final changes to the cash balance which is beyond the Debtor's control. The SBA's secured claim shall be paid on or before the Effective Date.** Should a failure to close on the Sale of the Debtor's assets constitute a breach or default under this Plan, the Debtor reserves the right to file an amended Plan that pays the SBA's claim in accordance with the terms of the Bankruptcy Code.

4.1.3 **<u>CLASS 3: General Unsecured Claims</u>**: Class 3 claims are impaired and are entitled to vote. At the time of filing its bankruptcy petition, Debtor estimates that claims in this class total approximately $1,480,508.06, which includes scheduled and claimed general unsecured vendor debts ($343,332.06), and the anticipated unsecured deficiency balance owed to the SBA ($1,137,176.00). The Waterfall Exhibit itemizes anticipated distributions, not claims. Therefore, there is a slight difference.

Class 3 claims will be paid a pro rata share of $25,000.00, which shall result from the sale of the Debtor's assets described in this Plan.

4.1.4    **CLASS 4: Equity Interests**: Class 4 consists of all allowed interests in the Debtor and consist of the equity interests of Richard Wilson.  All interests in the Debtor shall be retained. Class 4 interests are unimpaired and are conclusively deemed to have accepted this Plan. Therefore, Class 4 interests are not entitled to vote.

4.2.    **Claim Objections**

The Debtor may object to the amount or validity of any claim within 7 days of the entry of the Confirmation Order by filing an objection with the Bankruptcy Court and serving a copy of the objection to the holder of the claim. At this time Debtor does not currently anticipate filing any claim objections. The claim objected to will be treated as a disputed claim under the Plan.  If and when a disputed claim is finally resolved by the allowance of the claim in whole or part, the Debtor will pay the allowed claim in accordance with the Plan.  The Debtor does not anticipate filing any objections to claims.

## V.  TREATMENT OF EXECUTORY CONTRACTS AND LEASES

Any executory contracts or unexpired leases which (a) are not assumed in this Plan, (b) have not expired by their own terms on or prior to the Confirmation Date, (c) have not been assumed, assumed and assigned, or rejected with the approval of the Bankruptcy Court on or prior to the Effective Date or (c) are not the subject of a motion to assume or reject the same which is pending at the time of the Confirmation Date, will be deemed rejected by the Debtor on the Confirmation Date, and the entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

To the extent a Debtor has an interest in personal property that is subject to a rejected lease or executory contract, upon the Effective Date a Debtor abandons such property, without the need for any court order or hearing, effective as of the Confirmation Date. Any disputes or objections to such abandonment will be resolved by the Bankruptcy Court.

Claims arising out of the rejection of any executory contract or unexpired lease pursuant to the Joint Plan must be filed with the Bankruptcy Court no later than twenty-one (21) days after service of the Confirmation Order (in accordance with the Bar Date Order, at paragraph 5, DK 41).

15

Any Claim not filed within such time period is forever barred. Debtor has the right to object to any Claim arising out of the rejection of an executory contract or unexpired lease.

Claims arising out of the rejection of executory contracts and unexpired leases will, pursuant to section 502(g) of the Bankruptcy Code, be impaired and treated as Class 3 General Unsecured Claims.

The Debtor does not anticipate any rejected executory contract or unexpired lease claims.

### 5.1    **Assumed Executory Contracts**

The Debtor assumes the following Executory Contracts and/or Unexpired Leases and treats them as follows.  The Debtor reserves the right at any time before Confirmation to remove or add any contract from/to this list:

<u>Leestma Management, LLC a/k/a Adelaide Point QOZB, LLC</u> – Debtor has a commercial property lease agreement with Leestma Management, LLC.  Debtor is the tenant for commercial real estate located at 1204 W. Western Ave., #3, Muskegon, Michigan, 49441.  The Debtor assumes this lease and will assign it to the Buyer pursuant to the Order Authorizing the Sale of Substantially All of the Debtor's Assets to be entered in this proceeding.

## VI.  **IMPLEMENTATION OF PLAN AND DISTRIBUTIONS**

### 6.1    **Funding for the Plan – The Sale**

Pursuant to the terms of the Asset Purchase Agreement, the Debtor shall close the sale (the "Sale") and purchase of its assets within 10 business days of the Bankruptcy Court's order approving the sale becoming a final order under the Bankruptcy Code.  A hearing to approve the Sale will be held on November 15, 2023.  Upon the closing of the Sale, the Debtor will effectuate the sale transactions (the "Sale Transactions") contemplated pursuant to the Asset Purchase Agreement and, among other things, the Debtor's assets will be sold and transferred to and vested in Buyer free and clear of all Liens, Claims, Interests and Encumbrances pursuant to sections 363(f), 1123(a)(5)(D) and 1141(c) of the Bankruptcy Code and in accordance with the terms of the Confirmation Order, the Plan, and the Asset Purchase Agreement, each as applicable.

16

6.2    **Plan Funding Mechanism**.

The Plan shall be funded from the Sale proceeds and any other assets of the bankruptcy estate excluded from the Sale, except as expressly set forth herein.

6.3    **Corporate Action.**

The Plan will be administered by the Debtor and/or the Subchapter V Trustee.  The Debtor will make the distributions described in this Plan directly.  All actions taken under the Plan in the name of the Debtor shall be taken in accordance with the provisions of the Plan. Upon the distribution of all assets pursuant to the Plan, the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; provided, however, that the Debtor may, but will not be required to, take appropriate action to dissolve under applicable law.

6.4    **Closing of the Chapter 11 Case.**

After all disputed claims (if any) filed against the Debtor have become allowed claims or have been disallowed, and all assets have been liquidated and converted into cash (other than those assets that have been or may be abandoned), and such cash has been distributed in accordance with the Plan, or at such earlier time as the Debtor or Subchapter V Trustee deems appropriate, the Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

6.5    **Winding Down of Affairs.**

Following the Effective Date, the Debtor shall not engage in any business or take any actions, except those necessary to consummate the Plan and wind down its affairs. On and after the Effective Date, the Debtor or Subchapter V Trustee may take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than the restrictions imposed by the Plan or the Confirmation Order.

6.6    **Distributions**

All distributions under the Plan shall be made in accordance with the priorities established herein, on or before the Effective Date. Any cash payment made pursuant to the Plan may be made

17

by check or wire transfer. Distributions to holders of Allowed Claims will be made as follows: (i) at the respective addresses set forth in the Schedules unless superseded by the address set forth in the proofs of claim filed by the claim holder; (ii) at the address set forth in any written notice of address change delivered to Debtor after the date of filing of any proof of claim; or (iii) through wire transfer as provided to Debtor prior to the first distribution under the Plan. For any distribution that is scheduled to occur on a date that is not a business day then the making of such payment or distribution or the performance of such act may be completed on or as soon as reasonably practical on the next succeeding business day.

Subject to Bankruptcy Rule 9010, all distributions under the Plan to be made must be mailed to the address as listed on the claim holder's proof of claim or if no proof of claim was filed, as listed on the Schedules, unless Debtors have been notified in writing of a change of address before the distribution. Any payment made pursuant to the Plan will be made by check drawn on a domestic bank; provided, however, that the Debtor is not obligated to make any payment under the Plan  unless the payment exceeds ten dollars ($10.00), nor is the holder of such claim entitled to receive such payment unless the payment exceeds ten dollars ($10.00). Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment will reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of .50 or less and rounding up in the case of more than .50).

### 6.7   **Disbursing Agent**

The Debtor will act as the disbursing agent and make all distributions to all classes as provided for under the liquidating Plan.  Debtor shall not be compensated for acting as disbursing agent.  The Subchapter V Trustee will be paid in full within 10 days of entry of an Order approving his fees.

### 6.8   **Unclaimed Distributions**

Returned or otherwise undeliverable Distributions will remain in the possession of Debtor until such time as the distribution becomes deliverable. The Debtor shall take reasonable steps to attempt to deliver the distribution to the holder of the allowed claim. All distributions returned to the Debtor or otherwise not claimed within forty-five days of issuance shall be delivered to the Bankruptcy Court Clerk for deposit into the Registry Fund maintained by the Clerk.  Upon delivery

to the Bankruptcy Court Clerk, the party will have its claim for such undeliverable distribution discharged and will forever be barred from asserting any claim against the Debtor or its property or estate for such distribution.

6.9    **Setoffs**

Debtor may, but shall not be required to, setoff against any Claim (for purposes of determining the allowed amount of such claim in respect of which distribution shall be made), any claims of any nature whatsoever it may have against the holder of such Claim.

The Debtor anticipates the following setoffs will be sought by Motion prior to confirmation:

- Arvco Container Corporation ("Arvco") – Arvco is a supplier of goods to the Debtor. The Debtor's filed Schedules show a non-contingent, liquidated, and undisputed debt owed to Arvco in the amount of $44,170.68. The Debtor has determined that Arvco owes it $3,794.39 for goods that were delivered pre-petition (the setoff amount). Arvco has also stipulated for a 503(b)(9) administrative expense claim of $18,067.76. The Debtor will setoff $3,794.39, and in addition to the treatment of the 503(b)(9) claim, will result in a general unsecured claim for Arvco in the amount of $22,308.53.

- Green Bay Packaging, Inc. ("Green Bay") – Green Bay is a supplier of goods to the Debtor. Green Bay filed a Proof of Claim on September 19, 2023 (Claim #1), in the amount of $6,364.76. The Debtor has determined that Green Bay owes it $1,071.80 for goods that were delivered pre-petition (the setoff amount). The Debtor will setoff the amounts owed, which will result in a general unsecured claim for Green Bay in the amount of $5,292.96.

6.10    **Prepayment Right**

Debtor retains the right to prepay any allowed Claim pursuant to this Plan, at any time, within its business judgment.

## VII.  AVOIDANCE ACTIONS AND/OR PREFERENTIAL TRANSFER AND OTHER ACTIONS

Debtor, in consultation with its professionals, analyzed potential avoidance actions. Debtor has reviewed its records and concluded that there are no fraudulent transfer or avoidance actions ("Avoidance Actions") to pursue. As described in detail below, after analyzing the payments Debtor made in the 90 days preceding the bankruptcy filing, Debtor has not identified payments that would likely qualify as potential preference payments, and has concluded that there is not a significant likelihood that net preference recovery would result in any material distribution to creditors.  Accordingly, upon the Effective Date, Debtor will waive and release all Persons from any Avoidance Actions and further covenant not to sue upon such Avoidance Actions.

### 7.1  Section 547- Preference Claims

Generally speaking, subject to certain statutory defenses, the Bankruptcy Code permits a debtor to avoid or recover a payment from a creditor if the payment was made (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by Debtor to the creditor before the payment was made; (3) while Debtor was insolvent (and Debtor is presumed insolvent in the 90 days preceding bankruptcy) (4) within 90 days before the petition date; and (5) and enabled the creditor to receive more than it would have if Debtor liquidated under Chapter 7 of the Bankruptcy Code.

Payments a creditor received during the 90-day preference window are not avoidable, however, if a creditor can show that the payments were made in accordance with ordinary business terms, either on a subjective basis (compared to the transaction history between Debtor and creditor) or on an objective basis (compared to accepted industry standards).

A creditor may also avoid liability for a preference if the creditor gave new value in the form of new goods or services after the alleged preference payment was received. For example, if the creditor received a $5,000 payment from Debtor within the 90 day preference period, but the creditor subsequently shipped an additional $4,000 worth of goods to Debtor, the creditor can effectively offset the $4,000 worth of goods (*i.e.*, "new value") against the $5,000 payment, with a net preference exposure of $1,000. A creditor can rely on one or more of these defenses to payments it received during the preference period.

20

7.2    **Preference Claim Analysis**

With the assistance of Debtor's President, Richard Wilson, and Debtor's Financial Advisors, DTAS, based on the reasonable due diligence of the Debtor in the circumstances of this case, and taking into account the respective parties' known or reasonably knowable affirmative defenses the Debtor believes are available (see 11 U.S.C. § 547(b)),[1] under its business judgment the Debtor has not identified any potential preferences in excess of the threshold of $7,575.00. See Debtor's Preference Analysis attached as **Exhibit 4**.

The Debtor has identified two payments to a vendor creditor that were made outside of the ordinary course of typical payments.  The payments were made to Arvco Container Corporation ("Arvco") within 90 days of the petition date (see highlights on the Preference Analysis, Ex. 4, at pg. 1).  As indicated, the Debtor typically made ordinary course payments to Arvco within 30 days of invoice.  However, in these two specific circumstances, the Debtor can show that two separate administrative clerical errors caused the invoices to be lost or deleted.  In the first case, an invoice was inadvertently deleted from its payment system, and in the second case, the Debtor received a double sided invoice and did not input the back page into its system.  These two specific errors caused the two identified payments to be paid outside of the ordinary course (payments made on June 19, 2023 in the amount of $15,804.80, and payment made on July 21, 2023, in the amount of $3,178.92)(See Solemn Affirmation of Richard Wilson attached as **Exhibit 5,** describing the circumstances leading to the late Arvco payments).  The payments were made promptly by the Debtor upon learning of the administrative errors.

These two Arvco payments were late only for these reasons, and therefore the Debtor believes that pursuit of their recovery is not proper or advisable.  Further, based on these unique circumstances, the Debtor believes that even if such payments were pursued, any net recovery after taking into account defenses and litigation would not result in a net benefit to the estate.

Even assuming certain other payments may constitute preference payments, Debtor believes any net recovery of such payments would be minimal. Debtor has analyzed the payments made to creditors within the preference period. Based on this analysis, these payments do not constitute preferences. During the 90-day preference period, Debtor paid creditors in the ordinary

---

[1] The Debtor's Financial Advisor was conservative in its approach to the potential "ordinary course" defenses available to these creditors.  The Covid-19 pandemic has raised the question of what is "ordinary" between the parties, or within the industry, which could provide additional defenses to a potential preference defendant.

course of business, and continued to receive goods or services from those creditors that provided them. Excluding employee wages and those creditors who received less than $7,575.00 (the statutory minimum for a preference claim) during the preference period, Debtor paid unsecured creditors in the ordinary course of business, primarily for insurance, equipment maintenance, supplies (either directly to the supplier, or through reimbursement for supplies placed on individual credit cards), rent, and utilities. Accordingly, Debtor believes that the ordinary course defense would be applicable to substantially all payment recipients and estimates the net value of the preference claims to be de minimis. Retaining professionals to pursue these claims would require paying a percentage of the recovery amount, likely at least 30 percent of the gross recovery, and even if so identified, any applicable defenses would leave little potential preference exposure to pursue. Further, any such effort would take a significant amount of time to complete, likely more than two years, significantly delaying the distribution to creditors. The pursuit of preferences would also likely result in claims being brought against many of Debtor's smaller vendors, for who defending against such a suit could be a considerable burden.

In addition, even if potential preference payments were identified, they would be de minimus, and the Debtor is proposing to pay General Unsecured Creditors $25,000.00 through its Plan, which is the dividend to General Unsecured Creditors contemplated in Section 4.1.3. Further, given the factors stated above, additional defenses the creditors may have, the costs associated with retaining and funding litigation counsel to pursue the potential preferences, and the risks and costs associated with remaining in bankruptcy to the extent the Plan is not substantially consummated, the Debtor will not pursue preference recoveries in this matter.

7.3    **Secured Lender Claims – Avoidance Review Disclosure**

The Debtor's professionals have examined the documents and filings of the secured lenders in this matter to determine if any potential preference liability exists.  The Debtor analyzed the extent, validity, priority, and perfection of the claims and liens of the Secured Lenders.  The Debtor believes that the Debtor's secured lenders are properly perfected:

The Huntington National Bank - Huntington filed two all asset UCC-1 filings on December 5, 2016 (filing numbers 20161205000154-5 and 20161205000197-0) perfecting its security interest in all assets then owed or later acquired by Westpack Holdings, Inc.  On June 15, 2021,

Huntington timely filed two continuations in regard to these original UCC-1 filings (filing numbers 20210615000521-1 and 20210615000523-9).

    <u>Small Business Administration</u> – The SBA filed an all asset UCC-1 on May 22, 2020 (filing number 20200522000282-7) perfecting it security interest in all assets then owed or later acquired by Westpack Holdings, Inc.  The SBA is in second position as to the assets of the Debtor.  None of the liens are subject to avoidance pursuant to sections 544, 547, or 548 of the Bankruptcy Code.

7.4    **Section 548 - Fraudulent Conveyances**

There are no transfers which qualify as fraudulent conveyances.

### VIII.  <u>SUBCHAPTER V PLAN CONFIRMATION REQUIREMENTS</u>

    Subchapter V of chapter 11 of the Bankruptcy Code requires that the Debtor provide its creditors with sufficient information to analyze the Plan in order to make an informed decision regarding their vote on the Plan.

    Pursuant to sections 1129, 1190 and 1191 of the Bankruptcy Code, the Bankruptcy Court must find that:

    • the Plan satisfied the "*best interest of creditors tes*t" – requiring that creditors receive more under the Plan they would if the Debtor was liquidated under chapter 7 of the Bankruptcy Code;

    • the Plan is "*fair and equitable*" – requiring that the Plan must provide distributions to creditors greater than the liquidation value (the "Liquidation Value") of the Debtor's Estate and no less than the projected "Disposable Income" of the Debtor, as defined in section 1191(d) of the Bankruptcy Code over a certain commitment period; and

    • the Debtor will be, or is reasonably likely to be, able to make the payments promised under the Plan, or that the Plan is feasible. To satisfy these requirements, the Plan provides a liquidation analysis.

8.1    **Best Interest of Creditors – Liquidation Analysis**

Pursuant to section 1129(a)(7) of the Bankruptcy Code, for this Plan to be confirmed, each creditor must either have voted to accept the Plan (or be deemed to have accepted this Plan), or

this Plan must provide for each creditor to receive at least as much as it would as of the Effective Date if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date. A detailed liquidation analysis prepared by the Debtor with the assistance of its financial advisors and professionals is set forth in the attached **Exhibit 6** to this Plan.

### 8.2    <u>The Liquidating Plan is Fair and Equitable</u>

Pursuant to section 1191(c) of Subchapter V of the Bankruptcy Code, the Debtor's Plan must provide a payout to creditors of all of the Debtor's disposable income over a 3 to 5 year commitment period ("Disposable Income"). Sections 1191(c)(2)(A) and (B) of the Bankruptcy Code allows the Debtor to make Distributions over a period of between 3 to 5 years under a plan. Section 1191(c)(2)(A) also authorizes a debtor to make a lump sum payment that is equal to the present value of what would be the multi-year distribution. For the Plan to be confirmed, the Debtor must provide creditors with a distribution that is more than the Liquidation Value.

Because the Debtor is selling substantially all of its assets and is not continuing as a going concern after the closing of the Sale, the Debtor will not have Disposable Income post Effective Date over a 3, 4, or 5 year period. Instead, holders of allowed claims will receive a lump sum distribution from the Sale Proceeds that will exceed the Liquidation Value.

Under the Bankruptcy Code, the Debtor can confirm the Plan in one of two ways: (i) on a consensual basis under sections 1191(a) and 1129(a) of the Bankruptcy Code, this requires that the impaired creditors vote in favor of the Plan; or (ii) on a non-consensual basis under section 1191(b) of the Bankruptcy Code, under this section the Plan would be confirmed under the "cram down" provisions of the Bankruptcy Code. In either case, the Debtor is able to satisfy the requirement of section 1129(a)(7) of the Bankruptcy Code because holders of allowed General Unsecured Claims will receive an amount greater than the amount these creditors would be expected to receive in a hypothetical Chapter 7 liquidation.

### 8.3    <u>Plan Feasibility</u>

Sections 1191(c)(3)(A)(i) and (ii) of the Bankruptcy Code require that the Debtor "be able to make all payments under the plan; or that there is a reasonable likelihood that the debtor will be able to make all payments under the plan." The Plan satisfies these requirements. As discussed herein, the Debtor intends to fund the distributions under the Plan utilizing the Sale Proceeds after

the closing of the Sale. Under the Plan, sufficient funds exist to pay (i) all Allowed Priority and Administrative Claims and Secured Claims in full, or as agreed upon, as required by the Bankruptcy Code on or shortly after the Effective Date, in addition to a distribution to General Unsecured Creditors.

## IX.  VOTING RIGHTS AND PLAN CONFIRMATION

### 9.1    Voting Procedures

Each holder of an allowed claim in an impaired class of claims shall be entitled to vote or reject the Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order(s) of the Bankruptcy Court. A claim is "impaired" if, among other components, the plan alters "the legal, equitable, [or] contractual rights to which such claim . . . entitles the holder of such claim[.]" 11 U.S.C. § 1124(1). In other words, a claim is impaired where any right of the claim holder, be it amount paid, interest rate, or length of the secured interest payments, is altered by the Plan. A class will be deemed to have accepted the plan where greater than half of the class members vote in favor of the Plan and at least two-thirds (or 66.7%) of the voting amount, in dollars, votes in favor of the Plan. See 11 U.S.C. § 1126(c).

### 9.2    Non-Consensual Plan Confirmation

If any impaired class of claims entitled to vote does not accept the Plan by the requisite statutory majorities as imposed by Section 1126(c), Debtor reserves the right to amend or modify the Plan.  Alternatively, if an impaired class of claims rejects the Plan, Debtor may request the Bankruptcy Court to confirm the Plan under 11 U.S.C. § 1191(b). Under Section 1191(b), the Court "shall confirm the plan ... if the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." A Subchapter V Plan is fair and equitable where: (1) secured creditors retain their lien up to the value of the collateral and, over the life of the Plan, are paid the value of the Creditor's interest in the collateral; (2) all projected disposable income of the debtor over the life of the Plan is applied

25

to make payments under the plan; and (3) there is a reasonable likelihood that Debtor will be able to make all payments under the plan. 11 U.S.C. § 1129(c).

Considering the Liquidation Analysis set forth in **Exhibit 6,** Debtor asserts that the Plan is fair and equitable and will be confirmed with or without all classes' approval. Further, Debtor is not required to devote disposable income as this is a liquidating plan and therefore this requirement is not applicable.  Finally, as specified herein, the Plan is feasible, such that Debtor will be able to make all payments under the Plan.

## X. EFFECT OF CONFIRMATION OF THE PLAN

### 10.1    Effective Date

The Effective Date of this Plan is the first business day following the date that is 10 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

### 10.2.    Discharge

In accordance with Section 1141(d)(3) of the Bankruptcy Code, the Debtor will not receive any discharge of debt in this Chapter 11 Case.

### 10.3    Term of Bankruptcy Injunctions or Stays

Unless otherwise provided in the Confirmation order, all injunctions or stays provided for in this case under 11 U.S.C. §§ 105 or 362 and in existence on the Confirmation Date shall remain in full force and effect until the Effective Date.

### 10.4    Effect of Confirmation on Liens

Under Debtor's proposed Plan, the liens of Huntington Bank and the SBA, as set forth herein, would be extinguished upon payment of their allowed secured claims as discussed regarding treatment for Class 1 and Class 2.

Upon satisfaction of the Plan or the Effective Date, Debtor may apply to the Court for an order directing any necessary party to execute or deliver, or join in the execution or delivery of,

any instrument required to effect a transfer of property covered by the Plan and to perform any other act, including satisfaction of a Lien, that is necessary for the consummation of the Plan. See 11 U.S.C. § 1142(b). Any unreasonable withholding of such delivery by any Claim holder will entitle Debtor to the costs and fees of seeking such delivery, as approved by the Court.

### 10.5 **Causes of Action Reserved and Preserved**

As of the effective date, any and all causes of action, and, without limitation, avoidance actions accruing to the debtor under Chapter 5 of the Bankruptcy Code that are not otherwise resolved will not be pursued. Upon the Effective Date, Debtor will waive and release all persons or parties from any Avoidance Actions and further covenant not to sue upon such Avoidance Actions.

### 10.6 **Material Default**

If Debtor (1) fails to make any payment required under this Plan, or (2) fails to perform any other obligation required under this Plan for more than 14 days after the time specified in this Plan, then any affected creditor, interest holder, or other party in interest may file and serve upon Debtor and Debtor's attorney (if any) a written notice of default at their most recent address(es) listed in this case. Debtor is in material default under this Plan if Debtor fails within 21 days after service of that notice of default, plus an additional 3 days if served by mail, either to cure the default or obtain from the court an extension of time to cure the default or a determination that no material default occurred. The Debtor believes it will be able to make all payments under this Plan, in satisfaction of 11 U.S.C. § 1191(c)(3).  In event of a material default under a confirmed non-consensual Plan, any affected creditor, interest holder, or other party in interest claiming the material default may petition this Court, or any other court of competent jurisdiction, including Michigan State Court, for appropriate remedies that may include liquidation of nonexempt assets to protect the holders of claims or interests in the event that the payments are not made. Default remedies shall not be exclusive to Bankruptcy Court jurisdiction.  Notwithstanding the other provisions of this Plan, to the extent that Debtor has assumed an executory contract or unexpired lease, or to the extent that a creditor retains a lien under this Plan that was a consensual lien, the default provisions of that contract, lease, or lien documentation govern what constitutes a default

for purposes of the rights and remedies thereunder, all subject to applicable non-bankruptcy law and any exceptions set forth in this Plan.

## XI.  GENERAL PROVISIONS

### 11.1    Definitions and Rules of Construction

The Plan is governed by, and to be interpreted according to, 11 U.S.C. §§ 101, 102, and 1001, as well as Federal Rule of Bankruptcy Procedure 9001. Unless otherwise specified or defined herein, all terms, phrases, and words are to be interpreted consistent with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. All exhibits to the Plan are considered part of the Plan but in the event of any conflict, the terms of the Plan shall govern over the terms, contents, and/or projections of the exhibits.

### 11.2    11 U.S.C. § llll(b)(2) Election by Secured Creditors

Under 11 U.S.C. § 111 l(b)(2), secured creditors may elect to have an under secured claim treated as a fully secured claim to the extent such a claim is allowed. A creditor making such election must do so by no later than 5 days prior to the date first set for hearing of confirmation of this Plan.  Should any secured creditor make such an election, Debtor will treat their claim in compliance with Section 1111 (b)(2).  The Debtor reserves the right to dispute any election that is made pursuant to this section.

### 11.3    Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 11.4    Binding Effect

The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure onto any successors or assigns of such entity, including but not limited to any subsequent Chapter 7 Trustee, whether the entity has accepted the Plan or whether the entity is entitled a distribution under the Plan.

11.5    **Notices**

In order to be effective, all notices, requests, and demands to or upon Debtor shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received, addressed as follows:

Westpack Holdings, Inc.                     Westpack Holdings, Inc.

C/O A. Todd Almassian                     C/O Richard Wilson

Keller & Almassian, PLC                    9435 Stone View Drive NE

230 E. Fulton Street                          Rockford, MI 49341

Grand Rapids, MI 49503


11.6    **Modification of the Plan**

Pursuant to 11 U.S.C. § 1193, Debtor may amend or modify the Plan at any time before confirmation with notice to the creditors. After confirmation of a Plan confirmed consensually pursuant to Section 1191(a), the debtor may modify the Plan only if the Plan has not been substantially consummated and where the plan comports with the requirements of the Bankruptcy Code.  A holder of a claim that has accepted the Plan shall be deemed to have accepted a Modified or Amended Plan if the proposed modification does not materially alter or adversely change the treatment of the Claim. Debtor may, prior to the Effective Date, make technical changes and adjustments to cure scrivener's errors or typos without order or approval of the Court, provided that such changes and adjustments do not adversely affect any claim in a material way.


11.7    **Post-Confirmation Employment and Compensation of Professionals**

From and after the Effective Date, Debtor may, in the ordinary course of business and without the necessity of any approval by the Court, employ and/or retain the services of attorneys, accountants, and other professionals as it deems necessary in the ordinary course of business. Debtor may pay the post-confirmation fees and expenses of such professional persons for any matter as to which such professionals are employed.

11.8 **Headings**

Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

11.9 **Governing Law**

Except to the extent that the Bankruptcy Code, Bankruptcy Rules, or other federal law is applicable, or to the extent any exhibit of the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed in accordance with, the laws of the State of Michigan, without giving effect to the principles of conflicts of law of such jurisdiction.

11.10 **Retention of Jurisdiction**

The Court shall retain jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan pursuant to, and for purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes: (i) to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of any claims resulting therefrom; (ii) to hear and determine any and all adversary proceedings; (iii) to hear and determine any Administrative Expense Claims or Objections thereof; (iv) to enter and implement such orders as are necessary to implement the provisions of this Plan and to resolve any dispute arising from the implementation of the Plan; (v) to hear and determine all actions pursuant to sections 105, 502, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, and any collection matters related thereto and settlements thereof; (vi) to hear and determine any requests by Debtor to sell any asset pursuant to section 363 of the Bankruptcy Code; (vii) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the plan; and (viii) to enter a final degree closing this case.  As noted in Section 5.6, this Bankruptcy Court shall not have exclusive jurisdiction regarding Plan default matters, which may be heard in any court of competent jurisdiction.

11.11 **Vesting Upon Conversion**

In the event this case converts to a Chapter 7 proceeding, all property of the Debtor or the Debtor-in-Possession, will revest upon conversion and all of the Debtor's after acquired property shall be property of the Chapter 7 Estate.

**WESTPACK HOLDINGS, INC.**

Dated: November 7, 2023                    By: /s/ Richard Wilson
                                           Richard Wilson
                                           Its: President

**KELLER & ALMASSIAN, PLC**

Dated: November 7, 2023                    By: /s/ A. Todd Almassian
                                           A. Todd Almassian (P55467)
                                           Greg J. Ekdahl (P67768)
                                           Attorneys for Debtor
                                           230 E. Fulton Street
                                           Grand Rapids, MI 49503
                                           (616) 364-2100
                                           talmassian@kalawgr.com
                                           gekdahl@kalawgr.com

# EXHIBIT 1

**WESTPACK HOLDINGS, INC. - CASE NO. DG 23-02033**
**CLAIMS SUMMARY**

| No. | Creditor | Unsecured | % of Distribution | Distribution | Secured | P 503(b)(9) Amount |
|-----|----------|-----------|-------------------|--------------|---------|--------------------|
| 1 | Green Bay Packaging, Inc. | $5,292.96 | 0.36% | $89.49 | | |
| 2 | Mark-Maker Company, Inc. | $191.00 | 0.00% | $0.00 | | |
| 3 | Kentwood Packaging | $2,564.25 | 0.17% | $43.35 | | $3,391.70 |
| 4 | G&T Industries | $14,445.05 | 0.98% | $244.22 | | $6,637.95 |
| 5 | R.J. Woodworking, Inc. | $13,209.73 | 0.89% | $223.34 | | |
| 6 | JPMorgan Chase Bank, NA | $26,015.25 | 1.76% | $439.84 | | |
| 7 | SBA Denver Finance Center | $1,137,176.00 | 76.90% | $19,226.18 | $144,729.00 | |
| 8 | Dynamic Dies, Inc. | $1,031.00 | 0.07% | $17.43 | | |
| 9 | IntraCity Dispatch, Inc. | $14,454.00 | 0.98% | $244.37 | | |
| 10 | Specialty Adhesives, Inc. | $2,268.12 | 0.15% | $38.35 | | $1,188.18 |
| 11 | Internal Revenue Service | | | | | |
| 12 | NuPak Solutions, Inc. | $366.34 | 0.00% | $0.00 | | |
| 13 | Huntington National Bank | | | | $503,402.89 | |
| 14 | Matchbox Machinery | $25,175.49 | 1.70% | $425.64 | | |
| 15 | Cintas Corporation #301 | $905.22 | 0.06% | $15.30 | | |

**SCHEDULED**

| | Creditor | Unsecured | % of Distribution | Distribution | Secured | P 503(b)(9) Amount |
|-----|----------|-----------|-------------------|--------------|---------|--------------------|
| | Abzac-Multifold | $1,136.54 | 0.08% | $19.22 | | |
| | Action Packaging | $2,771.24 | 0.19% | $46.85 | | $1,691.55 |
| | Alta | | | | | $832.26 |
| | Arvco Container Corp. | $22,308.53 | 1.51% | $377.17 | | $18,067.76 |
| | Box Partners | $5,251.08 | 0.36% | $88.78 | | $0.00 |
| | Cascades Enviropac | $49,644.22 | 3.36% | $839.33 | | $0.00 |
| | ColorHub | | | | | $7,049.53 |
| | Continental Linen Services | $34.48 | 0.00% | $0.00 | | |
| | Employers Assoc. of WMI | $157.50 | 0.00% | $0.00 | | |
| | Fibers of Kalamazoo | $16,898.76 | 1.14% | $285.71 | | $0.00 |
| | Grainger Industrial Supply | $60.12 | 0.00% | $0.00 | | |
| | Grand River Insurance Agency | $4,294.00 | 0.29% | $72.60 | | |
| | Grand Industries | $633.00 | 0.04% | $10.70 | | $379.80 |
| | Holland Pallet Repair | $12,525.28 | 0.85% | $211.76 | | |
| | Hot Melt Technologies | | | | | $1,314.00 |
| | Michcor Container | $109,429.62 | 7.40% | $1,850.12 | | $21,333.15 |
| | Michigan Foam | $1,926.00 | 0.13% | $32.56 | | |
| | Nagel Paper Tubes | $2,649.36 | 0.18% | $44.79 | | |
| | Pratt Industries, Inc. | $2,721.02 | 0.18% | $46.00 | | |
| | RJE Machinery | $348.18 | 0.00% | $0.00 | | |
| | Same Day Delivery | $632.44 | 0.04% | $10.69 | | |
| | Staffing, Inc. | $548.62 | 0.00% | $0.00 | | |
| | USF Holland | $119.84 | 0.00% | $0.00 | | |
| | Westrock Box on Demand, LLC | $2,407.50 | 0.16% | $40.70 | | |
| | XPO Logistics | $916.32 | 0.06% | $15.49 | | |
| | | **$1,480,508.06** | **100.00%** | **$25,000.00** | **$648,131.89** | **$61,885.88** |

*Any claim distribution amount less than $10.00 will not receive a distribution payment pursuant to the Chapter 11-Subchapter V Plan.

# EXHIBIT 2

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

In the Matter of:

WESTPACK HOLDINGS, INC.,

      Debtor.

_____/

Case No. 23-02033-swd
Chapter 11 – Subchapter V
Hon. Scott W. Dales

**SOLEMN AFFIRMATION OF DAVID J. DISTEL**
**IN SUPPORT OF A PRIVATE SALE**

**Overview:**

1. Distel Thiede Advisory Services, LLC (hereafter "DT Advisors") was engaged by the Debtor pre-petition on July 18, 2023, to perform financial analysis, prepare financial forecasts, meet with lender representatives, communicate with creditors, and other mutually agreed upon services.

2. DT Advisors filed an application for employment as a Financial Advisor for the Debtor in its Chapter 11/Subchapter 5 proceedings and was approved by an order dated September 13, 2023.

3. The Debtor received a stalking horse offer and then prepared and filed a motion requesting approval of '(A) Bidding Procedures for the Proposed Sale of Substantially All of the Debtor's Assets and the Assumption and Assignment of Certain Executory Contract and Unexpired Lease, (B) Approving the Establishment of Cure Amounts, and (C) Scheduling a Final Sale Hearing and Approving the Form and Manner of Notice Thereof.' An order approving this motion was filed on September 13, 2023 [docket no 42].

4. The order had a schedule of key dates that included:

   a. October 20, 2023 – Deadline to submit Qualified Bids.
   b. October 26, 2023 – Auction to be Held (if necessary).
   c. October 27, 2023 – Deadline for Debtor to file with the Court the Notice of Successful Bidder.
   d. November 15, 2023 – Sale Hearing.

5. Discussions were held early in the process between the Debtor, Keller Almassian Law, and DT Advisors regarding the approach to marketing the Debtor's assets for sale.

1

## Sale Process Overview

6. DT Advisors prepared a one page 'teaser' with limited information (Exhibit A) to protect the Debtor's confidentiality and solicit interest in bidding. A minimum bid of $870,000 was outlined to potential bidders.

7. DT Advisors used a subscription-based online tool designed for, among other things, identification of potential interested buyers' of assets including public companies, private companies, private equity firms, and other M&A advisory data. [This tool is called Tagnify https://about.tagnifi.com .] Due to the relative small size of the Debtor's business in sales and asset terms, input from the Debtor and Keller Almassian Law, and in my business judgement, I focused on private companies in the same industry using NAICS Code 322211 for Corrugate Box Manufacturing. I also focused on companies in adjacent states to the Debtor's location (ie, Ohio, Indiana, and Illinois). However, we also received three emails of interest from potential financial buyers (ie, Private Equity).

8. After a process of validating the initial list, DT Advisors generated a list consisting of 199 potential strategic purchasers from the private companies in NAICS Code 322211 and sent emails consisting of a cover note and the teaser. The email 'blasts' were repeated three times before over 4 weeks during September. Of the 199 potential bidders, DT Advisors was able to reach a total of 161 potential strategic bidders. Of the 161, a total of 20 interested parties responded requesting a Non-Disclosure Agreement and more information on the Debtor's assets and operations. A total of 12 interested bidders responded by signing and returning an NDA and each of these interested potential bidders was provided access to a virtual data room created by the Debtor and DT Advisors.

The following table is a summary of the statistics of the marketing efforts by DT Advisors:

| WESTPACK MARKETING STATS | | | |
|---|---|---|---|
| | Initial Emails Sent | Parties Reached | Parties Responded | # of Parties that signed NDA |
| Indiana | 49 | 35 | 6 | 4 |
| Michigan | 70 | 58 | 3 | 1 |
| Ohio | 76 | 64 | 8 | 5 |
| Out of State Region | 4 | 4 | 3 | 2 |
| TOTALS: | 199 | 161 | 20 | 12 |

9. One investor conducted a visit to the Debtor's Muskegon-based operation and performed due diligence. Several conversations between this strategic buyer and Richard Wilson and

David Distel were held.  Ultimately, this buyer informed DT Advisors that his company decided to acquire another company and pass on the Debtor's auction.  Of the 12 interested parties that signed NDA's, all 12 decided not to bid during the week leading up to the deadline to receive bids.  None of the 12 requested an extension of the bid deadline. Accordingly, no bids were received on October 20, 2023, the Deadline to submit Qualified Bids.

The following represents a summary of the 20 parties who initially responded to DT Advisors, following the email marketing campaign:

| State | Company | Signed NDA | Notes |
|---|---|---|---|
| Indiana | Covington Box | No | 09.19.2023 Follow up email sent. NDA sent on 09.15.2023. No response and assumed uninterested. |
| Indiana | Welch Packaging | Yes | No longer interested. Decided to pursue another acquisition. |
| Indiana | Kelly Box | Yes | No longer interested. |
| Indiana | Arrow Container | Yes | No longer interested. |
| Indiana | Larsen Packaging | Yes | 10.24.2023 As of this date, no further response received. 10.17.2023 Sent follow up email. 10.03.2023 Left vm message regarding interest in bidding. |
| Michigan | Shoreline Container | No | No longer interested. |
| Michigan | Alma Container | Yes | No longer interested. |
| Michigan | Bradford Company | No | No longer interested. |
| Ohio | Buckeye Boxes | No | Was only interested if company was in Ohio |
| Ohio | Benchmark Inc. | Yes | No longer interested. |
| Ohio | Benchmark Inc. | Yes | No longer interested. |
| Ohio | Adapt A Pak | No | 09.19.2023 follow up email sent. No response and assumed uninterested. |
| Ohio | Tavens | Yes | No longer interested. |
| Ohio | Larsen Packaging | No | NDA sent to B. Laresen (Indiana); No response and assumed to be uninterested. |
| Ohio | Midwest Box Co. | No | 09.19.2023 Follow up email sent. NDA sent on 09.15.2023. No response and assumed uninterested. |
| Ohio | Mount Vernon Packaging | Yes | No longer interested. |
| Ohio | Propak Industries | Yes | No longer interested. |
| Other | Benchmark International | No | 09.19.2023 follow up email sent. No response and assumed uninterested. |
| Other | Pingora Capital | Yes | No longer interested. |
| Other | IJP Family Partners | Yes | No longer interested. |

10. Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing is true and correct:

Executed on: _____10 / 30 / 2023_____

/s/ _____

David J. Distel
Member and Senior Managing Director
Distel Thiede Advisory Services, LLC

4

# EXHIBIT 3

**WestPack Holdings, Inc.**
**Waterfall Analysis Based on Stalking Horse Offer updated**
**on 11/7/2023**

| | | | |
|---|---|---:|---|
| Westpack Acquisition LLC | $ | 800,000 | Stalking Horse Offer |
| | | | |
| Ending Cash Balance | $ | 88,115 | Forecast |
| Amount Available to Administrative Expenses/Distributions | $ | 888,115 | |
| | | | |
| LESS: | | | |
| Huntington/SBA 9a Loan plus Legal Fees | $ | (514,000) | First Lien |
| 503(b)9 [1] | $ | (61,886) | Computed |
| Unsecured Creditor Carve Out | $ | (25,000) | Computed |
| Debtor Prof Fees - Keller Almassian[2] | $ | (70,000) | Estimated |
| Debtor Prof Fees - DT Advisors [2] | $ | (50,000) | Estimated |
| Debtor Prof Fees - Subchapter V Trustee [2] | $ | (12,500) | Estimated |
| Other Wind Down Expenses [3] | $ | (10,000) | Estimated |
| | | | |
| Net Amount Available to EIDL | $ | 144,729 | |
| | | | |
| | | | |
| EIDL Deficiency | $ | (1,137,176) | EIDL Unsecured Claim Amount |

| Memo: | | | |
|---|---|---:|---:|
| Unsecured Creditors | $ | 341,507 | 23.1% |
| EIDL Deficiency Balance Total | $ | 1,137,176 | 76.9% |
| Unsecured | $ | 1,478,682 | 100% |

**Footnotes:**

(1) - 503(b)9 computed using the Accts Payable Balance on 8/31/23 and a lookback date of 8/11/23.
Total 503(b)9 amount was computed at $61,885.88.

(2) - A total of $132,500 of professional fees is estimated to complete the case from the Petition filing
to Confirmation.

(3) Other Wind Down Expenses includes the estimated cost for filing the FY 2023 tax return plus
a final tax return at the conclusion of the case plus legal fees to dissolve.

# EXHIBIT 4

| | Date | Num | Due Date | Open Balance | Qty | Cost Price | Amount | Paid | Check# | Date | Days Paid | Due Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ABZAC - MULTIFOLD** | | | | | | | | | | | | |
| | 06/28/2023 | 807745 | 07/28/2023 | 1,136.54 | 2,808.00 | 0.40475 | 1,136.54 | Unpaid | | | | |
| Total ABZAC - MULTIFOLD | | | | 1,136.54 | 2,808.00 | | 1,136.54 | | | | | |
| **ACTION PACKAGING** | | | | | | | | | | | | |
| | 04/21/2023 | 368279 | 05/21/2023 | | 52.00 | 4.60692 | 239.56 | Paid | 5147 | 5/22/2023 | | |
| | 05/19/2023 | 369235 | 06/18/2023 | | 10,000.00 | 0.024 | 240.00 | Paid | 5197 | 6/19/2023 | | |
| | 05/24/2023 | 369392 | 06/23/2023 | | 1,100.00 | 0.564 | 620.40 | Paid | 5197 | 6/20/2023 | | |
| | 05/24/2023 | 369392 | 06/23/2023 | | 550.00 | 1.124 | 618.20 | Paid | 5197 | 6/21/2023 | | |
| | 05/24/2023 | 369393 | 06/23/2023 | | 81.00 | 18.05198 | 1,462.21 | Paid | 5197 | 6/22/2023 | | |
| | 06/16/2023 | 370095 | 07/16/2023 | 2,531.24 | 148.00 | 17.10297 | 2,531.24 | Unpaid | | | | |
| | 07/10/2023 | 370747 | 08/09/2023 | 240.00 | 10,000.00 | 0.024 | 240.00 | Unpaid | | | | |
| | 08/18/2023 | 372106 | 09/17/2023 | 0.00 | | 0.605 | 0.00 | Not Receied Yet | | | | |
| | 08/18/2023 | 372106 | 09/17/2023 | 618.20 | 550.00 | 1.124 | 618.20 | Unpaid | | | | |
| | 08/21/2023 | | 09/20/2023 | 907.50 | 1,500.00 | 0.605 | 907.50 | Unpaid | | | | |
| Total ACTION PACKAGING | | | | 4,296.94 | 23,981.00 | | 7,477.31 | | | | | |
| **AMERICAN INKS & TECHOLOGY** | | | | | | | | | | | | |
| | 05/18/2023 | 28343 | 06/17/2023 | | 45.00 | 5.14 | 231.30 | Paid | 5191 | 6/16/2023 | | |
| | 05/18/2023 | 28343 | 06/17/2023 | | 90.00 | 1.10 | 99.00 | Paid | 5192 | 6/17/2023 | | |
| | 05/18/2023 | 28343 | 06/17/2023 | | 40.00 | 1.64 | 65.60 | Paid | 5193 | 6/18/2023 | | |
| | 05/18/2023 | 28343 | 06/17/2023 | | 1.00 | 106.47 | 106.47 | Paid | 5194 | 6/19/2023 | | |
| Total AMERICAN INKS & TECHOLOGY | | | | 0.00 | 176.00 | | 502.37 | | | | | |
| **APPLIED PRODUCTS** | | | | | | | | | | | | |
| | 05/10/2023 | 392076 | 06/09/2023 | | 1,050.00 | 5.76 | 6,048.00 | Paid | 5205 | 6/19/2023 | | |
| | 05/10/2023 | 392076 | 06/09/2023 | | 1.00 | 227.85 | 227.85 | Paid | 5205 | 6/19/2023 | | |
| Total APPLIED PRODUCTS | | | | 0.00 | 1,051.00 | | 6,275.85 | | | | | |
| **ARVCO CONTAINER CORPORATION** | | | | | | | | | | | | |
| | 05/05/2023 | 592589 | 06/04/2023 | | 160.00 | 22.26 | 3,561.60 | Paid | 5174 | 6/2/2023 | 28 | 30 |
| | 05/10/2023 | 592736 | 06/09/2023 | | 177.00 | 17.96 | 3,178.92 | Paid | 5245 | 7/21/2023 | 72 | 30 |
| | 05/11/2023 | 592735 | 06/10/2023 | | 880.00 | 17.96 | 15,804.80 | Paid | 5196 | 6/19/2023 | 39 | 30 |
| | 05/26/2023 | 593316 | 06/25/2023 | | 558.00 | 12.69 | 7,081.02 | Paid | 5207 | 6/23/2023 | 28 | 30 |
| | 06/08/2023 | 593677 | 07/08/2023 | | 859.00 | 17.96 | 15,427.64 | Paid | 5233 | 7/7/2023 | 29 | 30 |
| | 06/08/2023 | 593678 | 07/08/2023 | | 160.00 | 17.96 | 2,873.60 | Paid | 5233 | 7/7/2023 | 29 | 30 |
| | 06/21/2023 | 594122 | 07/21/2023 | 1,595.00 | 110.00 | 14.50 | 1,595.00 | Unpaid | | | | |
| | 07/19/2023 | 594970 | 08/18/2023 | 6,063.00 | 1,075.00 | 5.64 | 6,063.00 | Unpaid | | | | |
| | 07/19/2023 | 595019 | 08/18/2023 | 4,076.92 | 227.00 | 17.96 | 4,076.92 | Unpaid | | | | |
| | 07/20/2023 | 595066 | 08/19/2023 | 14,368.00 | 800.00 | 17.96 | 14,368.00 | Unpaid | | | | |
| | 08/18/2023 | 596071 | 09/17/2023 | 17,241.60 | 960.00 | 17.96 | 17,241.60 | Unpaid | | | | |
| Total ARVCO CONTAINER CORPORATION | | | | 43,344.52 | 5,966.00 | | 91,272.10 | | | | | |
| **BOX PARTNERS, LLC** | | | | | | | | | | | | |
| | 04/20/2023 | 15371028 | 05/20/2023 | | 1,700.00 | 0.10188 | 173.20 | Paid | 5142 | 5/19/2023 | | |
| | 04/20/2023 | 15371028 | 05/20/2023 | | 1.00 | 40.03 | 40.03 | Paid | 5142 | 5/19/2023 | | |
| | 04/21/2023 | 15385707 | 05/21/2023 | | 4.00 | 94.42 | 377.68 | Paid | 5149 | 5/22/2023 | | |
| | 04/21/2023 | 15385707 | 05/21/2023 | | 1.00 | 104.80 | 104.80 | Paid | 5149 | 5/22/2023 | | |
| | 05/04/2023 | 15423668 | 06/03/2023 | | 25.00 | 1.6132 | 40.33 | Paid | 5164 | 6/1/2023 | | |
| | 05/12/2023 | 15461855 | 06/11/2023 | | 11.00 | 128.55 | 1,414.05 | Paid | 5182 | 6/14/2023 | | |
| | 05/12/2023 | 15461855 | 06/11/2023 | | 1.00 | 10.00 | 10.00 | Paid | 5182 | 6/14/2023 | | |
| | 05/18/2023 | 15476496 | 06/17/2023 | | 4.00 | 72.55 | 290.20 | Paid | 5192 | 6/16/2023 | | |
| | 05/18/2023 | 15476496 | 06/17/2023 | | 1.00 | 104.40 | 104.40 | Paid | 5192 | 6/16/2023 | | |
| | 06/28/2023 | 5619075 | 07/28/2023 | 290.20 | 4.00 | 72.55 | 290.20 | Unpaid | | | | |
| | 06/28/2023 | 5619075 | 07/28/2023 | 503.12 | 4.00 | 125.78 | 503.12 | Unpaid | | | | |
| | 06/28/2023 | 5619075 | 07/28/2023 | 130.73 | 1.00 | 130.73 | 130.73 | Unpaid | | | | |
| | 07/21/2023 | 15704446 | 08/20/2023 | 13.41 | 50.00 | 0.2682 | 13.41 | Unpaid | | | | |
| | 08/10/2023 | 15782504 | 09/09/2023 | 435.30 | 6.00 | 72.55 | 435.30 | Unpaid | | | | |
| | 08/10/2023 | 15782504 | 09/09/2023 | 1,296.63 | 2,250.00 | 0.57628 | 1,296.63 | Unpaid | | | | |
| | 08/10/2023 | 15782504 | 09/09/2023 | 41.71 | 1.00 | 41.71 | 41.71 | Unpaid | | | | |
| | 08/16/2023 | 15794864 | 09/15/2023 | 65.49 | 1,000.00 | 0.06549 | 65.49 | Unpaid | | | | |
| | 08/16/2023 | 15794864 | 09/15/2023 | 83.16 | 75.00 | 1.1088 | 83.16 | Unpaid | | | | |
| | 08/16/2023 | 15794864 | 09/15/2023 | 90.15 | 500.00 | 0.1803 | 90.15 | Unpaid | | | | |
| | 08/16/2023 | 15794864 | 09/15/2023 | 64.80 | 500.00 | 0.12959 | 64.80 | Unpaid | | | | |
| | 08/16/2023 | 15794864 | 09/15/2023 | 114.21 | 1.00 | 114.21 | 114.21 | Unpaid | | | | |
| | 08/16/2023 | 15798183 | 09/15/2023 | 751.04 | 900.00 | 0.83449 | 751.04 | Unpaid | | | | |
| Total BOX PARTNERS, LLC | | | | 3,879.95 | 7,040.00 | | 6,434.63 | | | | | |
| **CASCADES ENVIROPAC** | | | | | | | | | | | | |
| | 04/21/2023 | 63224660 | 06/05/2023 | | 3,960.00 | 0.53688 | 2,126.04 | Paid | 5175 | 6/2/2023 | | |
| | 04/21/2023 | 63224660 | 06/05/2023 | | 396.00 | 1.05517 | 417.85 | Paid | 5175 | 6/2/2023 | | |
| | 04/26/2023 | 63232653 | 06/10/2023 | | 44.00 | 6.18121 | 271.97 | Paid | 5183 | 6/14/2023 | | |
| | 04/26/2023 | 63232653 | 06/10/2023 | | 360.00 | 3.24971 | 1,169.90 | Paid | 5183 | 6/14/2023 | | |
| | 04/26/2023 | 63232653 | 06/10/2023 | | 264.00 | 6.04646 | 1,596.27 | Paid | 5183 | 6/14/2023 | | |
| | 04/26/2023 | 63232653 | 06/10/2023 | | 2,640.00 | 0.53688 | 1,417.36 | Paid | 5183 | 6/14/2023 | | |
| | 05/04/2023 | 63241526 | 06/18/2023 | | 360.00 | 3.39663 | 1,222.79 | Paid | 5208 | 6/23/2023 | | |
| | 05/04/2023 | 63241526 | 06/18/2023 | | 360.00 | 3.48546 | 1,254.77 | Paid | 5208 | 6/23/2023 | | |

| Date | Invoice # | Date | | Amount | Rate | Amount | Status | Code | Date |
|---|---|---|---|---|---|---|---|---|---|
| 05/04/2023 | 63241526 | 06/18/2023 | | 320.00 | 4.11575 | 1,317.04 | Paid | 5208 | 6/23/2023 |
| 05/04/2023 | 63241526 | 06/18/2023 | | 484.00 | 2.6947 | 1,304.23 | Paid | 5208 | 6/23/2023 |
| 05/04/2023 | 63241526 | 06/18/2023 | | 1,848.00 | 0.53688 | 992.15 | Paid | 5208 | 6/23/2023 |
| 05/09/2023 | 63248199 | 06/23/2023 | | 176.00 | 2.6947 | 474.27 | Paid | 5208 | 6/23/2023 |
| 05/09/2023 | 63248199 | 06/23/2023 | | 1,584.00 | 0.53688 | 850.42 | Paid | 5208 | 6/23/2023 |
| 05/09/2023 | 63248199 | 06/23/2023 | | 1,320.00 | 1.05517 | 1,392.82 | Paid | 5208 | 6/23/2023 |
| 05/18/2023 | 63262461 | 07/02/2023 | | 704.00 | 2.6947 | 1,897.07 | Paid | 5222 | 7/3/2023 |
| 05/18/2023 | 63262461 | 07/02/2023 | | 264.00 | 0.53688 | 141.74 | Paid | 5222 | 7/3/2023 |
| 05/18/2023 | 63262461 | 07/02/2023 | | 360.00 | 3.48546 | 1,254.77 | Paid | 5222 | 7/3/2023 |
| 05/18/2023 | 63262461 | 07/02/2023 | | 5,280.00 | 0.53688 | 2,834.73 | Paid | 5222 | 7/3/2023 |
| 06/02/2023 | 63282524 | 07/17/2023 | 1,417.36 | 2,640.00 | 0.53688 | 1,417.36 | Unpaid | | |
| 06/02/2023 | 63282524 | 07/17/2023 | 1,671.39 | 1,584.00 | 1.05517 | 1,671.39 | Unpaid | | |
| 06/08/2023 | 63289291 | 07/23/2023 | 1,700.84 | 3,168.00 | 0.53688 | 1,700.84 | Unpaid | | |
| 06/08/2023 | 63289291 | 07/23/2023 | 1,671.39 | 1,584.00 | 1.05517 | 1,671.39 | Unpaid | | |
| 06/12/2023 | 63292723 | 07/27/2023 | 1,133.89 | 2,112.00 | 0.53688 | 1,133.89 | Unpaid | | |
| 06/12/2023 | 63292723 | 07/27/2023 | 696.41 | 660.00 | 1.05517 | 696.41 | Unpaid | | |
| 06/12/2023 | 63292723 | 07/27/2023 | 1,984.31 | 3,696.00 | 0.53688 | 1,984.31 | Unpaid | | |
| 06/19/2023 | 63303730 | 08/03/2023 | 2,089.24 | 1,980.00 | 1.05517 | 2,089.24 | Unpaid | | |
| 06/19/2023 | 63303730 | 08/03/2023 | 974.98 | 924.00 | 1.05517 | 974.98 | Unpaid | | |
| 06/28/2023 | 63317863 | 08/12/2023 | 1,677.19 | 540.00 | 3.1059 | 1,677.19 | Unpaid | | |
| 06/28/2023 | 63317863 | 08/12/2023 | 835.69 | 792.00 | 1.05517 | 835.69 | Unpaid | | |
| 06/28/2023 | 63317863 | 08/12/2023 | 2,126.04 | 3,960.00 | 0.53688 | 2,126.04 | Unpaid | | |
| 07/20/2023 | 63346396 | 09/03/2023 | 2,233.78 | 4,224.00 | 0.52883 | 2,233.78 | Unpaid | | |
| 08/01/2023 | 63361797 | 09/15/2023 | 1,652.03 | 540.00 | 3.05931 | 1,652.03 | Unpaid | | |
| 08/01/2023 | 63361798 | 09/15/2023 | 2,094.17 | 3,960.00 | 0.52883 | 2,094.17 | Unpaid | | |
| 08/01/2023 | 63361798 | 09/15/2023 | 2,743.86 | 2,640.00 | 1.03934 | 2,743.86 | Unpaid | | |
| 08/08/2023 | 63369175 | 09/22/2023 | 3,211.06 | 6,072.00 | 0.52883 | 3,211.06 | Unpaid | | |
| 08/16/2023 | 63381769 | 09/30/2023 | 1,396.11 | 2,640.00 | 0.52883 | 1,396.11 | Unpaid | | |
| 08/16/2023 | 63381769 | 09/30/2023 | 1,371.93 | 1,320.00 | 1.03934 | 1,371.93 | Unpaid | | |
| 08/16/2023 | 63381768 | 09/30/2023 | 2,134.77 | 1,620.00 | 1.31776 | 2,134.77 | Unpaid | | |
| 08/16/2023 | 63381768 | 09/30/2023 | 1,572.32 | 264.00 | 5.95576 | 1,572.32 | Unpaid | | |
| 08/16/2023 | 63381768 | 09/30/2023 | 1,152.35 | 360.00 | 3.20097 | 1,152.35 | Unpaid | | |
| **Total CASCADES ENVIROPAC** | | | **37,541.11** | **68,004.00** | | **59,477.27** | | | |
| **COLOR HUB** | | | | | | | | | |
| 05/12/2023 | 63303 | 06/11/2023 | | 1,879.00 | 5.224 | 9,565.90 | Paid | 5218 | 6/23/2023 |
| 08/16/2023 | 4619 | | 7,049.53 | 1,133.00 | 6.222 | 7,049.53 | Unpaid | | |
| **Total COLOR HUB** | | | **7,049.53** | **3,012.00** | | **16,615.43** | | | |
| **DYNAMIC DIES** | | | | | | | | | |
| 05/22/2023 | 628568 | 06/21/2023 | | 1.00 | 290.00 | 290.00 | Paid | 5201 | 6/19/2023 |
| 06/30/2023 | 632370 | 07/30/2023 | 250.00 | 1.00 | 250.00 | 250.00 | Unpaid | | |
| 07/19/2023 | 633793 | 08/18/2023 | 781.00 | 1.00 | 781.00 | 781.00 | Unpaid | | |
| **Total DYNAMIC DIES** | | | **1,031.00** | **3.00** | | **1,321.00** | | | |
| **FIBERS OF KALAMAZOO** | | | | | | | | | |
| 05/12/2023 | 0519267-IN | 06/11/2023 | | 900.00 | 7.05 | 6,345.00 | Paid | 5188 | 6/14/2023 |
| 05/16/2023 | 0520061-IN | 06/15/2023 | | 3,000.00 | 0.06279 | 188.37 | Paid | 5193 | 6/16/2023 |
| 05/16/2023 | 0520062-IN | 06/15/2023 | | 4,000.00 | 0.07 | 280.00 | Paid | 5193 | 6/16/2023 |
| 06/12/2023 | 0528546-IN | 07/12/2023 | 6,346.80 | 900.00 | 7.052 | 6,346.80 | Unpaid | | |
| 06/14/2023 | 0529527-IN | 07/14/2023 | 1,395.20 | 2,000.00 | 0.6976 | 1,395.20 | Unpaid | | |
| 06/20/2023 | 0531513-IN | 07/20/2023 | 420.00 | 6,000.00 | 0.07 | 420.00 | Unpaid | | |
| 06/20/2023 | 0531513-IN | 07/20/2023 | 252.00 | 2,000.00 | 0.126 | 252.00 | Unpaid | | |
| 07/11/2023 | 4523 | 08/10/2023 | 6,346.80 | 900.00 | 7.052 | 6,346.80 | Unpaid | | |
| 07/19/2023 | 0541497-in | 08/18/2023 | 279.04 | 4,000.00 | 0.06976 | 279.04 | Unpaid | | |
| 07/20/2023 | 0541809-IN | 08/19/2023 | 730.80 | 2.00 | 365.40 | 730.80 | Unpaid | | |
| 07/26/2023 | 0543877-IN | 08/25/2023 | 280.00 | 4,000.00 | 0.07 | 280.00 | Unpaid | | |
| 08/15/2023 | 0550960-IN | 09/14/2023 | 289.08 | 4,000.00 | 0.07227 | 289.08 | Unpaid | | |
| **Total FIBERS OF KALAMAZOO** | | | **16,339.72** | **31,702.00** | | **23,153.09** | | | |
| **G & T INDUSTRIES** | | | | | | | | | |
| 05/12/2023 | 55242597 | 06/11/2023 | | 400.00 | 66.15 | 26,460.00 | Paid | 5212 | 6/23/2023 |
| 05/12/2023 | 4529 | 06/11/2023 | | 2,448.00 | 1.20 | 2,937.60 | Paid | 5185 | 6/14/2023 |
| 05/15/2023 | 55242598 | 06/14/2023 | | 0.00 | 13.16 | 0.00 | Paid | 5224 | 6/23/2023 |
| 05/15/2023 | 55242598 | 06/14/2023 | | 0.00 | 16.99 | 0.00 | Paid | 5224 | 6/23/2023 |
| 05/15/2023 | 55242598 | 06/14/2023 | | 36.00 | 21.44 | 771.84 | Paid | 5224 | 6/23/2023 |
| 05/15/2023 | 55242598 | 06/14/2023 | | 200.00 | 2.29 | 458.00 | Paid | 5224 | 6/23/2023 |
| 05/15/2023 | 55242645 | 06/14/2023 | | 100.00 | 13.16 | 1,316.00 | Paid | 5224 | 6/23/2023 |
| 05/15/2023 | 55242645 | 06/14/2023 | | 48.00 | 16.99 | 815.52 | Paid | 5224 | 6/23/2023 |
| 05/15/2023 | 55242645 | 06/14/2023 | | 64.00 | 21.44 | 1,372.16 | Paid | 5224 | 6/23/2023 |
| 05/15/2023 | 55242599 | 06/14/2023 | | 2,052.00 | 1.20 | 2,462.40 | Paid | 5189 | 6/14/2023 |
| 05/16/2023 | 55242685 | 06/15/2023 | | 52.00 | 16.99 | 883.48 | Paid | 5224 | 6/23/2023 |
| 05/22/2023 | 55242850 | 06/21/2023 | | 10.00 | 172.05 | 1,720.50 | Paid | 5224 | 6/23/2023 |
| 06/05/2023 | 55243196 | 07/05/2023 | | 3,200.00 | 1.20 | 3,840.00 | Paid | 5224 | 6/23/2023 |
| 08/01/2023 | 5524460 | 08/31/2023 | 270.00 | 500.00 | 0.54 | 270.00 | Unpaid | | |
| 08/01/2023 | 5524460 | 08/31/2023 | 1,525.00 | 250.00 | 6.10 | 1,525.00 | Unpaid | | |

| | Date | Invoice | Due Date | Amount | Amount | Rate | Balance | Status | Check | Check Date |
|---|---|---|---|---|---|---|---|---|---|---|
| | 08/01/2023 | 5524460 | 08/31/2023 | 222.50 | 250.00 | 0.89 | 222.50 | Unpaid | | |
| | 08/01/2023 | 5524460 | 08/31/2023 | 420.00 | 500.00 | 0.84 | 420.00 | Unpaid | | |
| | 08/01/2023 | 55244642 | 08/31/2023 | 2,294.00 | 20.00 | 114.70 | 2,294.00 | Unpaid | | |
| | 08/01/2023 | 55244641 | 08/31/2023 | 3,441.00 | 20.00 | 172.05 | 3,441.00 | Unpaid | | |
| | 08/07/2023 | 55244812 | 09/06/2023 | 2,040.00 | 1,000.00 | 2.04 | 2,040.00 | Unpaid | | |
| | 08/07/2023 | 55244812 | 09/06/2023 | 685.00 | 500.00 | 1.37 | 685.00 | Unpaid | | |
| | 08/07/2023 | 55244812 | 09/06/2023 | 212.50 | 250.00 | 0.85 | 212.50 | Unpaid | | |
| | 08/07/2023 | 55244812 | 09/06/2023 | 345.00 | 500.00 | 0.69 | 345.00 | Unpaid | | |
| | 08/07/2023 | 55244812 | 09/06/2023 | 1,259.55 | 405.00 | 3.11 | 1,259.55 | Unpaid | | |
| | 08/08/2023 | 55244813 | 09/07/2023 | 1,720.50 | 10.00 | 172.05 | 1,720.50 | Unpaid | | |
| | 08/15/2023 | 55244999 | 09/14/2023 | 270.00 | 250.00 | 1.08 | 270.00 | Unpaid | | |
| | 08/15/2023 | 55244999 | 09/14/2023 | 450.00 | 500.00 | 0.90 | 450.00 | Unpaid | | |
| | 08/15/2023 | 55245000 | 09/14/2023 | 222.50 | 250.00 | 0.89 | 222.50 | Unpaid | | |
| | 08/15/2023 | 55244998 | 09/14/2023 | 295.45 | 95.00 | 3.11 | 295.45 | Unpaid | | |
| Total G & T INDUSTRIES | | | | 15,673.00 | 13,910.00 | | 58,710.50 | | | |
| **GRAND INDUSTRIES** | | | | | | | | | | |
| | 04/06/2023 | 27338 | 05/06/2023 | | 36.00 | 10.55 | 379.80 | Paid | 5130 | 5/11/2023 |
| | 05/04/2023 | 27537 | 06/03/2023 | | 36.00 | 10.55 | 379.80 | Paid | 5165 | 6/1/2023 |
| | 05/24/2023 | 27695 | 06/23/2023 | | 36.00 | 10.55 | 379.80 | Paid | 5202 | 6/19/2023 |
| | 06/14/2023 | 27857 | 07/14/2023 | | 36.00 | 10.55 | 379.80 | Paid | 5235 | 7/7/2023 |
| | 07/07/2023 | 28014 | 08/06/2023 | 253.20 | 24.00 | 10.55 | 253.20 | Unpaid | | |
| | 08/03/2023 | 28254 | 09/02/2023 | 379.80 | 36.00 | 10.55 | 379.80 | Unpaid | | |
| Total GRAND INDUSTRIES | | | | 633.00 | 204.00 | | 2,152.20 | | | |
| **GREEN BAY PACKAGING, INC** | | | | | | | | | | |
| | 05/31/2023 | 375511-14 | 06/30/2023 | | 245.00 | 4.857 | 1,189.97 | Paid | 5219 | 6/23/2023 |
| | 07/19/2023 | 378021-14 | 08/18/2023 | 2,529.79 | 437.00 | 5.789 | 2,529.79 | Unpaid | | |
| | 07/19/2023 | 378021-14 | 08/18/2023 | 2,025.32 | 251.00 | 8.069 | 2,025.32 | Unpaid | | |
| | 08/07/2023 | 378996-14 | 09/06/2023 | 1,809.65 | 432.00 | 4.189 | 1,809.65 | Unpaid | | |
| Total GREEN BAY PACKAGING, INC | | | | 6,364.76 | 1,365.00 | | 7,554.73 | | | |
| **HOLLAND PALLET REPAIR** | | | | | | | | | | |
| | 06/21/2023 | 99373 | 07/21/2023 | 972.00 | 54.00 | 18.00 | 972.00 | Unpaid | | |
| | 06/21/2023 | 99373 | 07/21/2023 | 364.50 | 54.00 | 6.75 | 364.50 | Unpaid | | |
| | 06/21/2023 | 99373 | 07/21/2023 | 1,042.75 | 97.00 | 10.75 | 1,042.75 | Unpaid | | |
| | 06/28/2023 | 99424 | 07/28/2023 | 1,640.00 | 20.00 | 82.00 | 1,640.00 | Unpaid | | |
| | 06/28/2023 | 99424 | 07/28/2023 | 390.00 | 40.00 | 9.75 | 390.00 | Unpaid | | |
| | 06/28/2023 | 99424 | 07/28/2023 | 630.00 | 140.00 | 4.50 | 630.00 | Unpaid | | |
| | 06/28/2023 | 99424 | 07/28/2023 | 79.80 | 1.00 | 79.80 | 79.80 | Unpaid | | |
| | 07/27/2023 | 99606 | 08/26/2023 | 2,100.00 | 200.00 | 10.50 | 2,100.00 | Unpaid | | |
| | 07/27/2023 | 99606 | 08/26/2023 | 1,075.00 | 100.00 | 10.75 | 1,075.00 | Unpaid | | |
| | 07/27/2023 | 99606 | 08/26/2023 | 630.00 | 140.00 | 4.50 | 630.00 | Unpaid | | |
| | 07/27/2023 | 99606 | 08/26/2023 | 648.00 | 36.00 | 18.00 | 648.00 | Unpaid | | |
| | 07/27/2023 | 99606 | 08/26/2023 | 133.59 | 1.00 | 133.59 | 133.59 | Unpaid | | |
| | 08/02/2023 | 99646 | 09/01/2023 | 1,575.00 | 150.00 | 10.50 | 1,575.00 | Unpaid | | |
| | 08/02/2023 | 99646 | 09/01/2023 | 808.50 | 77.00 | 10.50 | 808.50 | Unpaid | | |
| | 08/02/2023 | 99646 | 09/01/2023 | 300.00 | 50.00 | 6.00 | 300.00 | Unpaid | | |
| | 08/02/2023 | 99646 | 09/01/2023 | 64.76 | 1.00 | 64.76 | 64.76 | Unpaid | | |
| Total HOLLAND PALLET REPAIR | | | | 12,453.90 | 1,161.00 | | 12,453.90 | | | |
| **HOT MELT TECHNOLOGIES** | | | | | | | | | | |
| | 06/05/2023 | 0274539-IN | 07/05/2023 | | 300.00 | 3.73 | 1,119.00 | Paid | 5225 | 7/3/2023 |
| | 06/05/2023 | 0274539-IN | 07/05/2023 | | 1.00 | 150.00 | 150.00 | Paid | 5225 | 7/3/2023 |
| | 08/14/2023 | 0276066-IN | 09/13/2023 | 1,119.00 | 300.00 | 3.73 | 1,119.00 | Unpaid | | |
| Total HOT MELT TECHNOLOGIES | | | | 1,119.00 | 601.00 | | 2,388.00 | | | |
| **KENTWOOD PACKAGING** | | | | | | | | | | |
| | 05/05/2023 | 408926 | 06/04/2023 | | 1,073.00 | 2.63 | 2,821.99 | Paid | 5177 | 6/2/2023 |
| | 05/23/2023 | 410164 | 06/22/2023 | | 967.00 | 0.62 | 599.54 | Paid | 5203 | 6/19/2023 |
| | 06/05/2023 | 410934 | 07/05/2023 | | 450.00 | 7.744 | 3,484.80 | Paid | 5227 | 7/3/2023 |
| | 07/18/2023 | 413899 | 08/17/2023 | 1,370.00 | 500.00 | 2.74 | 1,370.00 | Unpaid | | |
| | 07/25/2023 | 414008 | 08/24/2023 | 1,301.50 | 475.00 | 2.74 | 1,301.50 | Unpaid | | |
| | 08/16/2023 | 201135 | 09/15/2023 | 2,340.70 | 890.00 | 2.63 | 2,340.70 | Unpaid | | |
| Total KENTWOOD PACKAGING | | | | 5,012.20 | 4,355.00 | | 11,918.53 | | | |
| **MARK MAKER** | | | | | | | | | | |
| | 05/10/2023 | V2303557 | 06/09/2023 | | 8.00 | 13.25 | 106.00 | Paid | | |
| | 05/10/2023 | V303997 | 06/09/2023 | | 6.00 | 18.33333 | 110.00 | Paid | | |
| | 05/10/2023 | V303997 | 06/09/2023 | | 1.00 | | 0.00 | Paid | | |
| | 06/26/2023 | V2305521 | 07/26/2023 | 191.00 | 1.00 | 191.00 | 191.00 | Unpaid | | |
| Total MARK MAKER | | | | 191.00 | 16.00 | | 407.00 | | | |
| **MCMASTER CARR** | | | | | | | | | | |
| | 04/20/2023 | 96399032 | 05/20/2023 | | 2.00 | 4.60 | 9.20 | Paid | | |
| | 04/20/2023 | 96399032 | 05/20/2023 | | 1.00 | 18.40 | 18.40 | Paid | | |
| | 04/20/2023 | 96399032 | 05/20/2023 | | 1.00 | 17.75 | 17.75 | Paid | | |
| | 04/20/2023 | 96399032 | 05/20/2023 | | 1.00 | 9.01 | 9.01 | Paid | | |
| | 04/20/2023 | 96399032 | 05/20/2023 | | 1.00 | 3.26 | 3.26 | Paid | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Total MCMASTER CARR | | | 0.00 | 6.00 | | 57.62 | | | |
| **MDS** | | | | | | | | | |
| 05/19/2023 | INV00238380 | 06/18/2023 | | 2.00 | 170.00 | 340.00 | Paid | | |
| 05/19/2023 | INV00238380 | 06/18/2023 | | 1.00 | 24.40 | 24.40 | Paid | | |
| Total MDS | | | 0.00 | 3.00 | | 364.40 | | | |
| **MICHCOR** | | | | | | | | | |
| 04/04/2023 | 50763 | 05/04/2023 | | 1,100.00 | 1.082 | 1,190.20 | Paid | 5129 | 5/8/2023 |
| 04/11/2023 | 50817 | 05/11/2023 | | 4,155.00 | 0.37132 | 1,542.83 | Paid | 5129 | 5/8/2023 |
| 04/11/2023 | 50817 | 05/11/2023 | | 1.00 | 80.00 | 80.00 | Paid | 5129 | 5/8/2023 |
| 04/14/2023 | 50835 | 05/14/2023 | | 7,970.00 | 0.769 | 6,128.93 | Paid | 5145 | 5/8/2023 |
| 04/14/2023 | 50835 | 05/14/2023 | | 610.00 | 0.57 | 347.70 | Paid | 5145 | 5/8/2023 |
| 04/26/2023 | 51021 | 05/26/2023 | | 4,163.00 | 0.45901 | 1,910.86 | Paid | 5162 | 5/25/2023 |
| 04/26/2023 | 51021 | 05/26/2023 | | 1.00 | 80.00 | 80.00 | Paid | 5162 | 5/25/2023 |
| 04/26/2023 | 51021 | 05/26/2023 | | 4,161.00 | 0.37131 | 1,545.02 | Paid | 5162 | 5/25/2023 |
| 04/26/2023 | 51021 | 05/26/2023 | | 1.00 | 80.00 | 80.00 | Paid | 5162 | 5/25/2023 |
| 04/28/2023 | 51043 | 05/28/2023 | | 1.00 | 499.00 | 499.00 | Paid | 5162 | 5/25/2023 |
| 04/28/2023 | 51043 | 05/28/2023 | | 1.00 | 401.00 | 401.00 | Paid | 5162 | 5/25/2023 |
| 05/04/2023 | 51107 | 06/03/2023 | | 5,320.00 | 0.605 | 3,218.60 | Paid | 5170 | 6/1/2023 |
| 05/05/2023 | 51136 | 06/04/2023 | | 3,819.00 | 0.37131 | 1,418.03 | Paid | 5179 | 6/2/2023 |
| 05/05/2023 | 51136 | 06/04/2023 | | 1.00 | 80.00 | 80.00 | Paid | 5179 | 6/2/2023 |
| 05/10/2023 | 51198 | 06/09/2023 | | 4,258.00 | 0.459 | 1,954.42 | Paid | 5179 | 6/2/2023 |
| 05/10/2023 | 51198 | 06/09/2023 | | 1.00 | 80.00 | 80.00 | Paid | 5179 | 6/2/2023 |
| 05/18/2023 | 51316 | 06/17/2023 | | 3,430.00 | 0.486 | 1,666.98 | Paid | 5187 | 6/14/2023 |
| 05/18/2023 | 51315 | | | -4,163.00 | 0.45901 | -1,910.86 | Paid | | |
| 05/18/2023 | 51315 | | | -1.00 | 80.00 | -80.00 | Paid | | |
| 05/18/2023 | 51330 | 06/17/2023 | | 5,689.00 | 0.37132 | 2,112.44 | Paid | 5206 | 6/19/2023 |
| 05/18/2023 | 51330 | 06/17/2023 | | 1.00 | 80.00 | 80.00 | Paid | 5206 | 6/19/2023 |
| 06/01/2023 | 51478 | 07/01/2023 | | 2,070.00 | 0.809 | 1,674.63 | Paid | 5228 | 7/3/2023 |
| 06/05/2023 | 51507 | 07/05/2023 | | 1,040.00 | 0.438 | 455.52 | Paid | 5228 | 7/3/2023 |
| 06/05/2023 | 51507 | 07/05/2023 | | 1,200.00 | 0.639 | 766.80 | Paid | 5228 | 7/3/2023 |
| 06/06/2023 | 51520 | 07/06/2023 | | 4,208.00 | 0.48287 | 2,031.92 | Paid | 5228 | 7/3/2023 |
| 06/06/2023 | 51520 | 07/06/2023 | | 1.00 | 80.00 | 80.00 | Paid | 5228 | 7/3/2023 |
| 06/06/2023 | 51520 | 07/06/2023 | | 4,040.00 | 0.37503 | 1,515.12 | Paid | 5228 | 7/3/2023 |
| 06/06/2023 | 51520 | 07/06/2023 | | 1.00 | 80.00 | 80.00 | Paid | 5228 | 7/3/2023 |
| 06/08/2023 | 51566 | 07/08/2023 | | 0.00 | 0.264 | 0.00 | Paid | 5237 | 7/7/2023 |
| 06/08/2023 | 51566 | 07/08/2023 | | 2,790.00 | 0.498 | 1,389.42 | Paid | 5237 | 7/7/2023 |
| 06/08/2023 | 51566 | 07/08/2023 | | 0.00 | 0.57 | 0.00 | Paid | 5237 | 7/7/2023 |
| 06/08/2023 | 51566 | 07/08/2023 | | 747.00 | 1.015 | 758.21 | Paid | 5237 | 7/7/2023 |
| 06/08/2023 | 51566 | 07/08/2023 | | 215.00 | 1.25 | 268.75 | Paid | 5237 | 7/7/2023 |
| 06/08/2023 | 5179 | | | -1.00 | 80.00 | -80.00 | Paid | | |
| 06/09/2023 | 51579 | 07/09/2023 | | 0.00 | 0.264 | 0.00 | Paid | 5237 | 7/7/2023 |
| 06/09/2023 | 51579 | 07/09/2023 | | 0.00 | 0.486 | 0.00 | Paid | 5237 | 7/7/2023 |
| 06/09/2023 | 51579 | 07/09/2023 | | 625.00 | 0.57 | 356.25 | Paid | 5237 | 7/7/2023 |
| 06/09/2023 | 51579 | 07/09/2023 | | 0.00 | 1.068 | 0.00 | Paid | 5237 | 7/7/2023 |
| 06/09/2023 | 51602 | 07/09/2023 | | 1.00 | 80.00 | 80.00 | Paid | 5237 | 7/7/2023 |
| 06/13/2023 | 51608 | 07/13/2023 | | 5,978.00 | 0.37131 | 2,219.69 | Paid | 5241 | 7/14/2023 |
| 06/13/2023 | 51608 | 07/13/2023 | | 1.00 | 80.00 | 80.00 | Paid | 5241 | 7/14/2023 |
| 06/15/2023 | 51656 | 07/15/2023 | | 10,030.00 | 0.265 | 2,657.95 | Paid | 5241 | 7/14/2023 |
| 06/20/2023 | 51709 | 07/20/2023 | 1,039.86 | 2,180.00 | 0.477 | 1,039.86 | Unpaid | | |
| 06/22/2023 | 4594 | 07/22/2023 | 1,554.30 | 4,186.00 | 0.37131 | 1,554.30 | Unpaid | | |
| 06/22/2023 | 4594 | 07/22/2023 | 80.00 | 1.00 | 80.00 | 80.00 | Unpaid | | |
| 06/29/2023 | 51839 | 07/29/2023 | 2,046.68 | 4,459.00 | 0.459 | 2,046.68 | Unpaid | | |
| 06/29/2023 | 51839 | 07/29/2023 | 80.00 | 1.00 | 80.00 | 80.00 | Unpaid | | |
| 07/05/2023 | 51885 | 08/04/2023 | 4,172.49 | 5,370.00 | 0.777 | 4,172.49 | Unpaid | | |
| 07/20/2023 | 52083 | 08/19/2023 | 1,770.93 | 4,554.00 | 0.38887 | 1,770.91 | Unpaid | | |
| 07/20/2023 | 52071 | 08/19/2023 | 281.17 | 265.00 | 1.06102 | 281.17 | Unpaid | | |
| 07/20/2023 | 52071 | 08/19/2023 | 2,407.60 | 5,200.00 | 0.463 | 2,407.60 | Unpaid | | |
| 07/27/2023 | 52178 | 08/26/2023 | 1,556.32 | 4,254.00 | 0.36585 | 1,556.33 | Unpaid | | |
| 07/27/2023 | 52178 | 08/26/2023 | 1,809.04 | 4,000.00 | 0.45226 | 1,809.04 | Unpaid | | |
| 08/04/2023 | 52278 | 09/03/2023 | 879.30 | 2,128.00 | 0.4132 | 879.29 | Unpaid | | |
| 08/04/2023 | 52278 | 09/03/2023 | 1,407.37 | 2,098.00 | 0.67082 | 1,407.38 | Unpaid | | |
| 08/04/2023 | 52278 | 09/03/2023 | 1,435.33 | 339.00 | 4.234 | 1,435.33 | Unpaid | | |
| 08/04/2023 | 52278 | 09/03/2023 | 2,079.48 | 5,684.00 | 0.36585 | 2,079.49 | Unpaid | | |
| 08/04/2023 | 52278 | 09/03/2023 | 240.00 | 3.00 | 80.00 | 240.00 | Unpaid | | |
| 08/09/2023 | 52339 | 09/08/2023 | 3,491.80 | 7,900.00 | 0.442 | 3,491.80 | Unpaid | | |
| 08/09/2023 | 52339 | 09/08/2023 | 1,202.24 | 2,720.00 | 0.442 | 1,202.24 | Unpaid | | |
| 08/10/2023 | 52364 | 09/09/2023 | 219.54 | 600.00 | 0.3659 | 219.54 | Unpaid | | |
| 08/10/2023 | 52364 | 09/09/2023 | 1,873.93 | 5,122.00 | 0.36586 | 1,873.93 | Unpaid | | |
| 08/10/2023 | 52364 | 09/09/2023 | 80.00 | 1.00 | 80.00 | 80.00 | Unpaid | | |
| Total MICHCOR | | | 29,707.38 | 134,530.00 | | 66,466.80 | | | |
| **MICHIGAN FOAM** | | | | | | | | | |
| 07/17/2023 | 49019 | 08/16/2023 | 1,695.00 | 1,500.00 | 1.13 | 1,695.00 | Unpaid | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 07/19/2023 49057 | 08/18/2023 | 231.00 | 550.00 | 0.42 | 231.00 Unpaid | | |
| Total MICHIGAN FOAM | | | 1,926.00 | 2,050.00 | | 1,926.00 | | |
| **Nagel Paper Tubes** | | | | | | | | |
| | 06/27/2023 4587 | 07/27/2023 | 2,440.70 | 5,376.00 | 0.454 | 2,440.70 Unpaid | | |
| | 06/27/2023 4587 | 07/27/2023 | 208.66 | 1.00 | 208.66 | 208.66 Unpaid | | |
| Total Nagel Paper Tubes | | | 2,649.36 | 5,377.00 | | 2,649.36 | | |
| **NICHOLS PAPER & SUPPLY CO** | | | | | | | | |
| | 06/12/2023 12469478-00 | 07/07/2023 | | 3.00 | 192.69 | 578.07 Paid | | |
| | 06/12/2023 12469478-00 | 07/07/2023 | | 1.00 | 10.00 | 10.00 Paid | | |
| Total NICHOLS PAPER & SUPPLY CO | | | 0.00 | 4.00 | | 588.07 | | |
| **NUPAK SOLUTIONS** | | | | | | | | |
| | 06/16/2023 016129 | 07/16/2023 | 366.34 | 1,728.00 | 0.212 | 366.34 Unpaid | | |
| Total NUPAK SOLUTIONS | | | 366.34 | 1,728.00 | | 366.34 | | |
| **PRATT INDUSTRIES GRAND RAPIDS** | | | | | | | | |
| | 04/21/2023 502526157 | 06/05/2023 | | 150.00 | 2.277 | 341.55 Paid | | |
| | 04/21/2023 502526157 | 06/05/2023 | | 150.00 | 2.277 | 341.55 Paid | | |
| | 05/10/2023 502526415 | 06/24/2023 | | 170.00 | 2.277 | 387.09 Paid | | |
| | 05/10/2023 502526415 | 06/24/2023 | | 170.00 | 2.277 | 387.09 Paid | | |
| | 05/19/2023 502526521 | 07/03/2023 | | 150.00 | 2.277 | 341.55 Paid | | |
| | 05/19/2023 502526521 | 07/03/2023 | | 150.00 | 2.277 | 341.55 Paid | | |
| | 05/31/2023 502526635 | 07/15/2023 | | 150.00 | 2.277 | 341.55 Paid | | |
| | 05/31/2023 502526635 | 07/15/2023 | | 113.00 | 2.277 | 257.30 Paid | | |
| | 06/07/2023 502526724 | 07/22/2023 | | 150.00 | 2.277 | 341.55 Paid | | |
| | 06/07/2023 502526724 | 07/22/2023 | | 150.00 | 2.277 | 341.55 Paid | | |
| | 07/19/2023 502527203 | 09/02/2023 | 685.38 | 301.00 | 2.277 | 685.38 Unpaid | | |
| | 07/19/2023 502527203 | 09/02/2023 | 683.10 | 300.00 | 2.277 | 683.10 Unpaid | | |
| | 08/10/2023 502527447 | 09/24/2023 | 683.10 | 300.00 | 2.277 | 683.10 Unpaid | | |
| | 08/10/2023 502527447 | 09/24/2023 | 669.44 | 294.00 | 2.277 | 669.44 Unpaid | | |
| Total PRATT INDUSTRIES GRAND RAPIDS | | | 2,721.02 | 2,698.00 | | 6,143.35 | | |
| **RJE MACHINERY** | | | | | | | | |
| | 07/11/2023 14691 | 08/10/2023 | 303.60 | 8.00 | 37.95 | 303.60 Unpaid | | |
| Total RJE MACHINERY | | | 303.60 | 8.00 | | 303.60 | | |
| **SCHRIER PLASTICS CORP** | | | | | | | | |
| Was originally due in M: | 05/18/2023 A8725 | 06/17/2023 | | 210.00 | 52.00 | 10,920.00 Paid | 5216 | 6/23/2023 |
| Was originally due in M: | 08/14/2023 A9109 | 08/14/2023 | | 20.00 | 18.932 | 378.64 Paid | 5257 | 8/15/2023 |
| Was originally due in M: | 08/14/2023 A9109 | 08/14/2023 | | 20.00 | 21.021 | 420.42 Paid | 5257 | 8/15/2023 |
| Was originally due in M: | 08/14/2023 A9109 | 08/14/2023 | | 20.00 | 33.159 | 663.18 Paid | 5257 | 8/15/2023 |
| Was originally due in M: | 08/14/2023 A9109 | 08/14/2023 | | 20.00 | 41.916 | 838.32 Paid | 5257 | 8/15/2023 |
| | 08/14/2023 A9109 | 08/14/2023 | | 20.00 | 47.303 | 946.06 Paid | 5257 | 8/15/2023 |
| Total SCHRIER PLASTICS CORP | | | 0.00 | 310.00 | | 14,166.62 | | |
| **SPECIALTY ADHESIVES** | | | | | | | | |
| | 05/03/2023 INV0220047 | 06/02/2023 | | 932.00 | 1.23 | 1,146.36 Paid | | |
| | 07/05/2023 4601 | 08/04/2023 | 1,143.90 | 930.00 | 1.23 | 1,143.90 Unpaid | | |
| | 07/31/2023 INV0222099 | 08/30/2023 | 1,124.22 | 914.00 | 1.23 | 1,124.22 Unpaid | | |
| Total SPECIALTY ADHESIVES | | | 2,268.12 | 2,776.00 | | 3,414.48 | | |
| **STAFFORD CORRUGATED PRODUCTS** | | | | | | | | |
| | 07/20/2023 0294122-IN | 07/20/2023 | | 11.00 | 106.74 | 1,174.14 Paid | CC | 7/20/2023 |
| | 07/20/2023 0294122-IN | 07/20/2023 | | 1.00 | 0.00 | 0.00 Paid | CC | 7/20/2023 |
| | 07/20/2023 0294122-IN | 07/20/2023 | | 1.00 | 0.00 | 0.00 Paid | CC | 7/20/2023 |
| | 07/20/2023 0294122-IN | 07/20/2023 | | 1.00 | 151.48 | 151.48 Paid | CC | 7/20/2023 |
| Total STAFFORD CORRUGATED PRODUCTS | | | 0.00 | 14.00 | | 1,325.62 | | |
| **WESTROCK BOX ON DEMAND, LLC** | | | | | | | | |
| | 06/14/2023 4647183242 | 07/14/2023 | 915.54 | 6.00 | 152.59 | 915.54 Unpaid | | |
| | 06/14/2023 4647183242 | 07/14/2023 | 1,491.96 | 6.00 | 248.66 | 1,491.96 Unpaid | | |
| Total WESTROCK BOX ON DEMAND, LLC | | | 2,407.50 | 12.00 | | 2,407.50 | | |

# EXHIBIT 5

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

In the Matter of:

WESTPACK HOLDINGS, INC.,

        Debtor.

_____/

Case No. 23-02033-swd
Chapter 11 – Subchapter V
Hon. Scott W. Dales

### SOLEMN AFFIRMATION OF RICHARD WILSON

1. I am the owner and manager of Westpack Holdings, Inc.

2. I am familiar with the payments made by the Debtor to creditors within the 90 days prior to the filing of the Chapter 11 bankruptcy proceeding.

3. In May of 2023, the Debtor received two invoices from Arvco Container Corporation ("Arvco"), showing amounts due for $3,178.92, and $15,804.80, respectively.

4. The Debtor had historically made payments to Arvco within approximately 30 days of invoice.

5. For the two invoices described herein, however, the Debtor made two clerical errors that caused the Arvco invoices in question to be missed.

6. One of the invoices was inadvertently deleted from the email account and was not entered in the system. Upon receipt of a copy of that invoice from the vendor it was promptly entered into QuickBooks and paid.

7. The second invoice was part of a two page document, the back page of which was inadvertently missed with the second invoice, and was not entered into the payment system until we were sent another copy by the vendor, at which point it was promptly entered and paid.

8. As a result of these errors, both invoices were not entered into the Debtor's internal system for payments in the ordinary course.

9. As soon as the errors were identified, the Debtor immediately made payments as required.

10. The clerical errors were the only reason the payments were made outside of the typical ordinary course time frame of approximately 30 days from invoice.

11. Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing is true and correct:

Executed on: __11|7|2023__

/s/ _____
Richard Wilson

# EXHIBIT 6

**EXHIBIT 6**

Liquidation Analysis


If the Debtor is liquidated in a Chapter 7 case, then the unsecured creditors would receive the net value of assets, after secured debts, priority debts, liquidation expenses, and administrative costs of the Chapter 11 Subchapter V and 7 proceeding. There will be no funds available to general, unsecured creditors at the conclusion of a Chapter 7 proceeding. Debtor's Chapter 11 Subchapter V Plan provides for a carve-out payment of a pro rata share of $25,000.00. Therefore, unsecured creditors will receive more than they would if this were a liquidation case under Chapter 7.

Debtor does not own any real property. Debtor owns the following personal property (Valued on the Petition Date and based on Debtor's Schedule A/B):

| **Assets with Liquidation Value:** | |
|---|---|
| Deposit Accounts | $119,151.70 |
| Accounts Receivable | $176,121.18 |
| Inventory | $150,768.08 |
| Office furniture and equipment | $3,600.00 |
| CAD Software | $5,000.00 |
| Machinery and Equipment | $414,900.00 |
| **Total Value of Assets** | **$869,540.96** |


| **Secured Debt:** | |
|---|---|
| Huntington National Bank | $503,402.89 |
| Small Business Administration | $1,281,905.00 |
| **Total Secured Debts** | **$1,785,307.89** |

Chapter 11 Subchapter V and Chapter 7 Administrative Expenses and Fees:

| | | |
|---|---|---|
| Chapter 11 Administrative Expenses (Professional Fees and 503(b) claims) | $ | 120,000.00 |
| Chapter 7 Administrative Expenses | $ | 10,000.00 |
| Trustee's Commissions | $ | 47,200.00 |
| Trustee's Counsel | $ | 10,000.00 |
| Forced Liquidation Discount | $ | 100,000.00 |
| Occupancy Costs During Wind Down | | TBD |
| **Total Administrative and Liquidation Expenses** | **$** | **$287,200.00** |

Debtor's estimation of the distribution to unsecured creditors in a Chapter 7 from liquidation of assets would be $0.

In addition to the liquidation, the Chapter 7 Trustee is entitled to pursue Chapter 5 claims pursuant to case Sections 544, 547, and 548, among other Sections.  The Debtor's Legal Counsel and Financial Advisor performed due diligence of the possible Chapter 5 recoveries. There are no viable Chapter 5 Claims.

Debtor's proposed Plan distribution to unsecured creditors is $25,000.00.