## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN

In the Matter of:

|  |  |
|---|---|
|  | Case No. DG 23-02033 |
| **WESTPACK HOLDINGS, INC.** | Chapter 11- Subchapter V |
|  | Hon. Scott W. Dales |

     Debtor.

_____/

## DECLARATION OF RICHARD WILSON IN SUPPORT OF CONFIRMATION OF THE DEBTOR'S CHAPTER 11 PLAN UNDER SUBCHAPTER V OF CHAPTER 11

NOW COMES Richard Wilson and, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury as follows:

1. I am the President of Westpack Holdings, Inc. (the "**Debtor**" or "**Westpack**"), I am over the age of twenty-one (21) and am competent to testify regarding the matters contained herein.

2. I submit this declaration (this "**Declaration**") in support of the Debtor's *Memorandum of Law in Support of Confirmation of the Debtor's Chapter 11 Plan Under Subchapter V of Chapter 11* (the "**Confirmation Brief**"), filed contemporaneously herewith, and in support of confirmation of the *Chapter 11 Plan Under Subchapter V of Chapter 11* [Docket No. 80] (as may be amended, modified, or supplemented from time to time, the "**Plan**").[1]

3. In my capacity as the President of the Debtor, I am familiar with the Debtor's day-to-day operations, financial condition, business affairs and books and records. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; information supplied or verified by the Debtor's personnel in departments within the various business units of the Debtor; my review of the Debtor's books and records as well as other relevant documents; my discussions with other members of the Debtor's management team and the Debtor's advisors; or my opinion based upon experience, expertise and knowledge of the Debtor's operations and

_____

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or the Confirmation Brief, as applicable.

financial condition.  In making my statements based on my review of the Debtor's books and records, relevant documents and other information prepared or collected by the Debtor's employees and advisors, I have relied upon these employees and advisors accurately recording, preparing, collecting or verifying any such documentation and other information. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

4.      I have been the owner of the Debtor since I purchased it in November of 2016. There are no other corporate officers or owners.

5.      Debtor produces and supplies custom corrugates, foam, plastic, and honeycomb packaging for many different industries including automotive, furniture, consumer products, and casting and machining markets.

6.      Within the first 24 months of purchasing Westpack it unfortunately suffered some major setbacks. Its third largest customer at the time moved most of their manufacturing to Mexico. Another top five customer filed bankruptcy which led to a significant loss.  Additionally, Westpack's second and sixth largest customers closed down operations due to market conditions.

7.      Westpack struggled, but managed to slowly replace a percentage of that business to remain operational, and was initially having some success in doing so prior to the COVID 19 pandemic.

8.      Westpack was deemed an essential supplier during the COVID 19 Pandemic, but only a small portion (50-60%) of its customers were deemed as such. Westpack cut back to its core full time employees and received two rounds of PPP loans to try and remain solvent during this time. Westpack also utilized the EIDL program to survive and invest in equipment and machinery to prosper post pandemic.

9.      After the pandemic Westpack was extremely busy and utilized the EIDL funding to make key investments in newer, faster and more efficient equipment to allow it to process the amount of business it was doing, and in anticipation of its customer's planned demand.

10.      In order to support the growth, Westpack invested heavily in 2021 and 2022 to address deferred maintenance issues, three new assembly lines to handle growth in our laminated business, fork trucks to move materials, an automated box making line that printed, slotted, scored, die cut and glued in one operation, as well as additional equipment to support that production line.

11.     This caused significant financial strain, especially in late 2022 as Westpack needed to send out a large percentage of its work during key parts of the installation process on new machinery, and to complete a significant rebuild and upgrade to its jumbo box making machinery.

12.     Westpack also realized significant increases in its cost of financing through our original SBA loan as the interest rate more than doubled in a 12-month calendar period.

13.     Additionally, in the third quarter of 2022, Westpack started to see reduced forecasts in demand in the first quarter of 2023, driven by overall economic conditions and softened demand.

14.     Westpack entered this economic downturn while still trying to finish installation and upgrades on its equipment.  This caused a significant drain on its cash reserves as it was operating at significantly lower sales levels.  Cost of raw materials were declining and there was additional pressure from the market on reduced pricing on packaging, leading to tight margins and further negative effect on cash flow.

15.     As the economic downturn continued, Westpack realized that the continued squeeze on margins, continued increases in interest rates, inflationary increases on labor, health insurance and benefits, increasing labor costs to retain employees would continue to reduce its cash reserves below a viable operating level.

## DEVELOPMENT OF THE PLAN

A.     **The Plan and the Transactions Incorporated Therein Are the Result of Arm's Length Negotiations and Have Been Proposed in Good Faith and for a Proper Purpose**

16.     The Plan represents the culmination of extensive negotiations among the Debtor, Huntington Bank, the Small Business Administration, the United States Trustee's office, and various unsecured creditor parties.  The Debtor has worked closely with its legal and financial advisors and myself to analyze various alternatives and to reach a unanimous deal that will benefit all parties-in-interest.  The Plan proposes to pay general unsecured creditors $25,000.00, which would not necessarily be otherwise available without the agreement of the Small Business Administration and the professionals. Since the commencement of this Chapter 11 Case, the parties have had regular and frequent meetings and telephone calls to discuss and negotiate the terms of

the Plan. I believe the Plan reflects the end product of these efforts and constitutes the best available option for distribution of the Debtor's assets and is in the best interests of the creditors and parties.

17. The overwhelming consensus on the terms of the Debtor's restructuring is further evidenced by the number and amount of Holders of Claims in the Voting Classes who have voted to accept the Plan. One hundred percent (100%) of the voting Claims voted in favor the Plan.

18. I believe the Plan has been proposed in good faith, with the legitimate and honest purpose of effectuating the best possible recovery for creditors. I believe that the support of the Debtor's primary constituencies, and the overwhelming acceptance of the Plan, reflect the overall fairness of the Plan and the acknowledgement by the Debtor's claimholders that the Plan has been proposed in good faith and for proper purposes. Accordingly, I believe the Plan has not been proposed by any means prohibited by law, that the Plan is consistent with the goals of Chapter 11 and the Bankruptcy Code, and that the Plan is in the best interests of all creditors and should be approved.

## PRIMARY TERMS OF THE PLAN

**A.    Classification of Claims and Interests Pursuant to the Plan**

19. Section IV of the Plan provides for the classification of Claims and Interests in the Debtor into four (4) individual Classes. I believe that valid business, factual and legal reasons exist for the various Classes of Claims and Interests created under the Plan and I believe that such Classes do not unfairly discriminate between holders of Claims or Interests. For example, the Plan separately classifies Fully Secured Creditors, Partial Secured Creditors, General Unsecured Claims, and Equitable Interests.

20. I believe the Plan's classification of claims into separate classes is proper. Class 1 consists of the Secured Claim of Huntington Bank. Class 2 consists of the Secured claim of the Small Business Administration. Class 3 consists of all General Unsecured Claims. Class 4 consists of the Equity Interests in the Debtor.

21. I believe this classification scheme established under the Plan is reasonable based upon the differences in the nature and priority of the claims asserted against the Debtor, and all claims within a class are substantially similar.

**B.**      **Adequate Means for Implementing the Plan**

22.      I believe the various provisions of the Plan will provide adequate means for the Plan's implementation.  The Plan contemplates the distribution of funds resulting from the court approved sale of substantially all of the Debtor's assets which will provide the primary means for implementation of the Plan and its treatment of the various Classes of Claims. I have firsthand knowledge of the amounts generated by the sale.

**C.**      **Post-Confirmation Corporate Governance**

23.      I believe that the Plan contains the appropriate corporate governance provisions required by the Bankruptcy Code, as such requirements have been explained to me.  First, the Plan does not call for the issuance of any equity securities and the Debtor will not continue operations.

24.      Second, after the Effective Date, the Debtor will not have any directors or officers since the Debtor will no longer be conducting business operations.  Instead, the Plan provides the Debtor may retain professionals, including Keller & Almassian, PLC and Distel Thiede Advisory Services, LLC, on a post confirmation basis to continue to assist Debtor to administer the terms of the Plan and for the purpose of winding up and concluding its business affairs.

**D.**      **Treatment of Contracts and Leases**

25.      Section V of the Plan sets forth the procedures for the assumption, assumption and assignment, or rejection of the Debtor's Executory Contracts and Unexpired Leases.  The Plan provides for the assumption of its lease with Leetstma Management, LLC, the landlord for the business facility, which it will assign to the Buyer pursuant to the Plan and Sale Order.

26.      In determining which Executory Contracts and Unexpired Leases to assume or reject pursuant to the Plan, the Debtor, in consultation with its professionals, conducted a review of its contracts and leases. Based on this review, I believe the Debtor has exercised its reasonable business judgment in determining whether to assume or reject its Executory Contracts and Unexpired Leases pursuant to the Plan.

**E.**      **Preservation of Rights of Action; Settlement of Claims**

27.      Section VII of the Plan states that the Debtor will not pursue any preference claims or avoidance actions.

**F.      The Plan Does Not Provide for Any Rate Change Subject to Regulatory Approval**

28.      Bankruptcy Code section 1129(a)(6), which I understand relates to debtors whose rates are subject to governmental regulation following confirmation, does not apply here because there is no governmental regulatory commission that has jurisdiction over the Debtor's rates.

**G.      The Plan Does Not Discriminate Unfairly and Is Fair and Equitable**

29.      No classes have rejected the Plan.  Accordingly, the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to any such Class.

30.      I believe that the Plan does not discriminate unfairly with respect to any Class because members within any Class are treated similarly and no Class has voted to reject the Plan.

**H.      The Plan Has Been Accepted by At Least One Impaired Class Determined Without Any Acceptance of the Plan by Any Insider**

31.      As set forth in the Voting Report filed in this case, all Impaired Classes have voted to accept the Plan.  I have reviewed the list of claimants in Classes 1, 2 and 3 and believe that such Classes are comprised exclusively of non-insider Claims.  The Plan has not received a single "no" vote as to any Class.  As a result, at least one Class of Claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider.

**I.      The Plan Does Not Modify Retiree Benefits**

32.      Bankruptcy Code section 1129(a)(13), which I understand relates to a debtor's provision of certain retiree benefits, does not apply here because the Debtor does not have any obligations on account of retiree benefits (as such term is used in section 1114 of the Bankruptcy Code).

**J.      The Plan Does Not Implicate the Restrictions on Transfers of Property by Nonprofit Entities**

33.      Bankruptcy Code section 1129(a)(16), which I understand relates to restrictions on nonprofit debtors' transfers of property, does not apply here because the Debtor is a moneyed, business, and commercial business entities.

**K.      The Purpose Of The Plan Is Not The Avoidance Of Taxes Or The Avoidance Of The Securities Laws**

34.      Bankruptcy Code section 1129(d) does not apply here because the purpose of the Plan is not the avoidance of taxes or the avoidance of the application of the securities laws.

## THE PLAN IS FEASIBLE

35.      I have worked with other members of the Debtor's restructuring and financial advisors to develop the Plan.  In addition, I have examined and evaluated the Plan and am familiar with the material provisions of the Plan and the restructurings embodied therein. Based upon the foregoing and my other work with the Debtor through the Chapter 11 Case, and based on the facts and circumstances known to me at this time, I believe that the Plan and the transactions embodied therein represent the best alternative available to the Debtor under the circumstances, and provide for the best available outcome for the Debtor and its creditors.

36.      Moreover, for purposes of determining whether the Plan satisfies the feasibility standards, with the assistance of the Debtor and its advisors, I understand what proceeds have been generated from the sale of the Debtor's assets.  Based on my review of the available funds produced by the sale of these assets, I believe that the Debtor will be able to make the distributions required under the Plan.

37.      Finally, based on my analysis of, among other things, the Plan and the transactions embodied therein, I believe the confirmation of this Plan is in the best interests of the creditors and interested parties.  It will avoid a conversion to chapter 7 and resulting administrative insolvency, will efficiently resolve these proceedings, will make the best possible distribution to its secured creditors, pay professional fees, and will provide a distribution to general unsecured creditors.

## CONCLUSION

38.      Based on the foregoing, I believe that the Plan and the transactions embodied therein have been structured to accomplish the Debtor's goal of maximizing the returns available to stakeholders.  I believe that the Plan is feasible and that the holders of Claims that are impaired under the Plan will retain or receive property that is at least equal to the amount that they would receive if the Debtor was liquidated under a hypothetical chapter 7 case.  I believe that the

overwhelming 100% support of the holders of Claims against the Debtor further reflects the overall fairness and reasonableness of the Plan and that the Plan has been proposed in good faith and for proper purposes.

39.     I hereby reserve my right to amend the testimony set forth herein as necessary at the hearing to consider confirmation of the Plan.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 15, 2023                     By: /s/ Richard Wilson_____
                                             Richard Wilson